[Civ. No. 4391.   Fourth Dist.   Apr. 17, 1953.]

RUTH LOHR ADAMS, Appellant, v. R. C. HENNING et al.,
Respondents.

West, Vizzard, Howden & Baker for Appellant.

Conron, Heard & James for Respondents.

BARNARD, P. J.—The plaintiff has appealed from a judgment in favor of the defendants based upon the granting of their motion for a nonsuit. ▪ On such an appeal the evidence must be construed most favorably to the plaintiff; conflicts in the evidence are not to be considered; credit must be given only to that part of the plaintiff's evidence which tends to support the complaint; and the judgment may be sustained only when it appears that there is no substantial evidence which would have supported a judgment in favor of the plaintiff. (*Reynolds* v. *Filomeo*, 38 Cal.2d 5 [236 P.2d 801].)

▪ This action involved alleged damage to a crop of potatoes owned by the plaintiff. The plaintiff had three fields of potatoes on her land, the southerly field consisting of about 28 acres. The defendant Henning had a field of potatoes immediately south of the 28-acre field, the two fields being separated only by a fence. On August 4, 1948, and again on August 21, 1948, the defendants caused a spray to be released from an aircraft over the land of the defendant Henning. For this purpose the aircraft flew in a north and south direction, cutting off the spray near the boundary and then turning over the plaintiff's field and flying back over the defendants' field, where the spray was again released. This spray was an emulsion containing three chemicals, two being of a kind used for killing insects and the third, known as 2,4-D, used for killing weeds.

An employee of the plaintiff testified that while he was cultivating in the middle of this 28-acre field on August 21, he saw the plane come up, shutting off the spray near the boundary and then circling over the field in which he was working and going back over the defendants' field, and that he could see the dust rise but could not tell whether any of the spray came across the fence line. However, the next day he observed that there was a wasting away of the leaves, a brownish color and a curling of the leaves of the potatoes

on the plaintiff's land. The plaintiff testified to observing the same condition prior to August 21 and after that date. She also testified that the crop from that field, when harvested, was much smaller than that produced on her other two fields; that the potatoes were small and blistered and of an inferior grade; and that the potatoes "broke down" and decayed while they were being shipped to Los Angeles and San Diego to such an extent that they were rejected by the officials when they arrived.

Two potato experts testified that the application of 2,4-D to a potato plant would cause a rolling and spiraling of the leaf and would cause most plants to age prematurely and die. Another expert testified that the application of 2,4-D would have quite a contrary effect on the plants, causing them to grow faster, develop more rapidly, and mature earlier. There was also evidence that while very little was known about 2,4-D at that time it was later classified by the State Department of Agriculture as a hazardous substance and a special permit was required before it could be applied to any form of plant life.

The evidence was not sufficient to support some of the elements of damages relied on by the plaintiff, and the evidence as a whole seems to predominate in favor of the defendants. There was a notable absence of any evidence as to the effect of this spray on the potatoes on defendants' land, where it was admittedly applied in much larger quantities, and where its injurious effect, if any, would naturally be more apparent. There was also evidence that some of the effects normally to be expected from the use of this spray were not found on plaintiff's land, and other evidence indicating that a large part, if not all, of the damage was caused by other things. However, viewed in the light most favorable to the plaintiff, a part of the evidence would justify an inference that some of this spray was deposited on at least a part of the plaintiff's land, and that some damage resulted therefrom. Factual questions were thus presented, upon which findings should have been made. Under familiar rules, it was error to grant the motion for a nonsuit.

The judgment is reversed.

Griffin, J., and Mussell, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied June 11, 1953. Schauer, J., was of the opinion that the petition should be granted.