[Civ. No. 34518. First Dist., Div. Two. Aug. 4, 1975.]

SIDNEY SCHONFELD, Plaintiff and Appellant, v.
CITY OF VALLEJO et al., Defendants and Respondents.

**COUNSEL**

Howard B. Crittenden, Jr., for Plaintiff and Appellant.

Orrick, Herrington, Rowley & Sutcliffe, Richard J. Lucas, W. Reece Bader and John H. McGuckin, Jr., for Defendants and Respondents.

**OPINION**

**TAYLOR, P. J.**—Plaintiff, Sidney Schonfeld, appeals from a judgment of nonsuit as to his causes of action for fraud and misrepresentation against

respondent, Ficklin, the former city manager of the respondent, City of Vallejo, and from a judgment of dismissal, sustaining without leave to amend the city's demurrer to his causes of action for fraud, misrepresentation and breach of contract. Both appeals raise questions of first impression as to the interpretation and scope of the fraud and misrepresentation exceptions of Government Code sections 818.8 and 822.2. The appeal from the nonsuit also raises the question of whether, disregarding all conflicts in the evidence and giving Schonfeld's evidence all the value to which it was legally entitled, he presented any sufficient substantial evidence to support a verdict in his favor. In addition, Schonfeld asserts that the entry of the judgment of dismissal in favor of the city on his first two causes of action violated the one-judgment rule, as his fourth cause of action against the city is still pending. For the reasons set forth below, we have concluded that there is no merit to any of his contentions and that the judgment of nonsuit, as well as the judgment of dismissal, must be affirmed.

So far as here pertinent, Schonfeld's amended complaint against the city and the city manager alleged the following underlying facts: in 1960, pursuant to the development of its waterfront property bordering on Mare Island Straits, the city obtained additional land contiguous to city-owned property from the United States through the Department of the Interior, and applied for state assistance to finance the construction of the Vallejo Municipal Marina (hereafter the marina). On June 14, 1962, a loan agreement was executed between the city and state in the principal amount of $1,200,000 for marina construction. Between 1962 and 1965, the city prepared the marina site, including a harbor and attendant berthing facilities, and constructed three on-shore facilities: a harbormaster building, a boat repair facility, and a boat storage building. The long-range plans called for the additional construction by private developers of on-shore facilities.

On August 27, 1964, the city leased the marina· premises to Vallejo Marina, Inc. (hereafter VMI), for a period of 55 years at an annual rental of $60,400. Under the lease, VMI was obligated to operate the marina and construct the additional facilities under a site development schedule, subleasing these facilities as it and the city deemed desirable. In mid-1965, a supplemental lease was executed, adding additional land to the area leased by VMI; Schonfeld, a private developer, became involved in the marina in late 1965, and subsequently withdrew from the project.

Schonfeld's amended complaint set forth the following pertinent causes[1] of action: the first, against the city and the city manager, alleged that in December 1965, each made false and fraudulent oral representations to Schonfeld to induce him to pay the $60,400 rental then due under the VMI lease and to induce him to acquire certain unspecified rights in the leasehold.[2] In reliance on these representations, Schonfeld paid the city $60,400 in January 1966 and took an assignment from VMI of an undivided one-half interest in the demised premises as security.

The second cause of action against the city alone alleged that: 1) Schonfeld was a third party beneficiary of the lease between the city and VMI, and therefore entitled to sue for the city's breach of its warranties of title and quiet enjoyment, as well as its covenant to provide certain improvements; and 2) Schonfeld, as an assignee of a one-half interest in the leasehold for security, and as a mortgagee of the lease, was entitled to sue for fraudulent misrepresentation and for breach of various express and implied covenants.

The fourth cause of action sought declaratory relief against the city on the theory that the assignment of the one-half interest in the leasehold that Schonfeld received from VMI was a valid mortgage and not an invalid assignment prohibited by the terms of the lease. This cause of action is still pending.

The city and city manager demurred to each cause of action generally on grounds of failure to state sufficient facts and specifically on grounds of ambiguity and uncertainty. The trial court sustained the demurrers as to the city without leave to amend on the first two causes of action, and overruled the demurrers as to the city manager on the first cause of action for fraud and misrepresentation. After a nine-day trial, the court granted a nonsuit pursuant to Code of Civil Procedure section 581c, and also ruled that Schonfeld had failed to prove that any representations by the city manager constituted common law deceit or were made "with actual fraud, corruption or actual malice" within the meaning of Government Code section 822.2. Subsequently, on February 7, 1972, the court entered a judgment of nonsuit in favor of the city manager and a judgment of dismissal as to the two causes of action against the city.

---

[1] The city attorney, Rolland L. Pope, initially also named as a defendant, died during the proceedings below. Judgment was entered in his favor as to the first cause of action, and as to the third cause of action dismissed with prejudice.

[2] The specific misrepresentations alleged will be set forth and discussed in detail in the subsequent portions of this opinion dealing with the specific legal issues presented.

## I. The Nonsuit

We turn first to the judgment of nonsuit in favor of the city manager on Schonfeld's first cause of action for fraud and misrepresentation.

Government Code section 822.2 provides: "A public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice." This statute must be read together with[3] Government Code section 818.8, which provides: "A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional."

While neither section defines "misrepresentation,"[4] our Supreme Court in *Johnson* v. *State of California,* 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], relying on analogous provisions in the Federal Tort Claims Act (28 U.S.C. § 2680(h)), and the legislative comment, quoted below, held at page 800 that the Legislature limited the immunity of section 818.8 to exempt governmental entities from liability for interference with financial and commercial interests,[5] a tort distinct from the general milieu of negligent and intentional wrongs (cf. *Connelly* v. *State of California,* 3 Cal.App.3d 744, 748 [84 Cal.Rptr. 257]).[6] The Legislature

---

[3]The only available legislative history reveals that both of these provisions were added by the Senate Judiciary Committee (Sen.J. Mar. 19, 1963, p. 902), which added the following comment after section 818.8, that was also made applicable to Government Code section 822.2: "This section provides public entities with an absolute immunity from liability for negligent or intentional misrepresentation. A similar immunity is provided public employees by Section 822.2 except that an employee may be held liable if he is guilty of actual fraud, corruption or actual malice. This section will provide, for example, a public entity with protection against possible tort liability where it is claimed that an employee negligently misrepresented that the public entity would waive the terms of a construction contract requiring approval before changes were made."

[4]For this and other helpful analytical materials, we are indebted to the city's excellent brief, Bader, *Public Entity and Employee Immunity for Misrepresentation,* 7 Lincoln L. Rev. 1, Van Alstyne, California Government Tort Liability (Cont.Ed. Bar 1964 & 1969 Supp.) and the many studies on sovereign immunity of the California Law Revision Commission.

[5]Prior to *Johnson,* section 818.8 had been interpreted not to apply to actions for fraudulent breach of contract (*Souza & McCue Constr. Co.* v. *Superior Court,* 57 Cal.2d 508 [20 Cal.Rptr. 634, 370 P.2d 338]; *E. H. Morrill Co.* v. *State of California,* 65 Cal.2d 787 [56 Cal.Rptr. 479, 423 P.2d 551]; and its companion case. *Wunderlich* v. *State of California,* 65 Cal.2d 777 [56 Cal.Rptr. 473, 423 P.2d 545]; *City of Salinas* v. *Souza & McCue Construction Co.,* 66 Cal.2d 217 [57 Cal.Rptr. 337, 424 P.2d 921]).

[6]*Connelly* held that Government Code section 818.8 did not apply to a service gratuitously performed by the state that resulted in physical damage to the plaintiffs' property.

intended to insure that such acts would never become the basis for public liability (*Brown* v. *City of Los Angeles*, 267 Cal.App.2d 849, 851 [73 Cal.Rptr. 364]).

Civil Code section 1571 defines two forms of fraud: actual and constructive. Actual fraud, as defined in Civil Code section 1572, is in five categories, four of which are identical to the tort of deceit (Civ. Code, § 1710). Civil Code section 1572, however, by its terms, is limited to acts committed by one party to a contract with intent to deceive another party to the contract or to induce him to enter into a contract. Pursuant to *Souza & McCue Constr. Co., supra*, and Government Code section 814, contractual situations are not within the immunities of sections 818.8 or 822.2. Schonfeld's action against the city manager was not based on any contractual situation or breach of duty that would give rise to an action for constructive fraud (Civ. Code, § 1573). Civil Code section 1709 defines fraudulent deceit in terms of common law fraud: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

California law generally defines four kinds of deceit: 1) intentional misrepresentation (Civ. Code, § 1710, subd. 1): "The suggestion, as a fact, of that which is not true, by one who does not believe it to be true" (cf. Civ. Code, § 1572, subd. 1); 2) negligent misrepresentation (Civ. Code, § 1710, subd. 2): "The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true" (cf. Civ. Code, § 1572, subd. 2) ("not warranted by the information of the person making it"); 3) concealment. Civil Code section 1710, subdivision 3: "The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact" (cf. Civ. Code, §§ 1572, subd. 3, 1572, subd. 1); and 4) failure to perform a promise (Civ. Code, § 1710, subd. 4): "A promise, made without any intention of performing it." (Cf. Civ. Code, § 1572, subd. 4.)[7]

More recently, our Supreme Court held in *Warner Constr. Corp.* v. *City of Los Angeles*, 2 Cal.3d 285 [85 Cal.Rptr. 444, 466 P.2d 996] (at pp.

---

[7]We need not here reach the question of whether the immunity of Government Code sections 822.2 and 818.8 also extends to this kind of deceit, as there are no allegations in the complaint relating to the city manager's failure to perform a promise. Nor need we discuss the term "corruption," as there were no allegations that the city manager's conduct was within that term of section 822.2.

293 and 294) that fraudulent concealment was within the immunity of Government Code section 818.8.

 The city urges that "actual fraud," as used in Government Code section 822.2 must be construed to mean "fraud and malice" based on personal malevolence or wrongful purpose (*Grove .v. Purity Stores, Ltd.,* 153 Cal.App.2d 234 [314 P.2d 543]) and that "actual malice" is akin to that required for defamation, malicious prosecution or exemplary damages (*Albertson v. Raboff,* 46 Cal.2d 375 [295 P.2d 405]; *Sturges v. Charles L. Harney, Inc.,* 165 Cal.App.2d 306 [331 P.2d 1072]; *Wolfsen v. Hathaway,* 32 Cal.2d 632 [198 P.2d 1]; *Gudger v. Manton,* 21 Cal.2d 537, 543 [134 P.2d 217]; *Washer v. Bank of America,* 21 Cal.2d 822 [136 P.2d 297, 155 A.L.R. 1338]). The city argues that the language of the exceptions of Government Code section 822.2, when construed in context of the purpose of the governmental immunity statutes, and the use of the terms actual fraud and actual malice in other statutes, indicates that the immunity applies unless, in addition to the essentials of common law deceit, the public entity or its employee had a conscious intent to deceive, vex, annoy or harm the injured party in his business.[8]

We see merit in this contention. We are aware of our duty to harmonize statutory provisions, if at all possible (Code Civ. Proc., § 1859; *Smith v. County of Los Angeles,* 276 Cal.App.2d 156 [81 Cal.Rptr. 120]). The legislative intent must not be sacrificed to the literal construction of a particular part of a statute if a rational interpretation can be applied to the statute in toto (*Select Base Materials v. Board of Equal.,* 51 Cal.2d 640 [335 P.2d 672]).

 If we were to adopt the interpretation of the term "actual fraud" espoused by Schonfeld, Government Code section 822.2 would be unintelligible. Inasmuch as both intentional and negligent misrepresentations are encompassed within the definition of "actual fraud" pursuant to Civil Code sections 1710, subdivisions 1 and 2 and 1572, subdivisions 1 and 2, the statute would read, in essence: "A public employee is not liable for his intentional or negligent misrepresentation unless he is guilty of intentional or negligent misrepresentation." Such an interpretation would render the entire statute meaningless and the legislative purpose would clearly be defeated.

---

[8]We consider misleading the dicta in *Miller v. Hoagland,* 247 Cal.App.2d 57, at page 62 [55 Cal.Rptr. 311], that Government Code section 822.2 extends immunity to public employees even if an act is malicious and without probable cause or an intentional tort.

Accordingly, we hold that the immunity afforded by Government Code section 822.2 applies unless, in addition to the essentials of common law deceit, a public employee is motivated by corruption or actual malice, i.e., a conscious intent to deceive, vex, annoy or harm the injured party in his business.[9] As there is no allegation of corruption in this case, we now turn to the pleadings to ascertain whether any of Schonfeld's allegations plead a cause of action against the city manager for any misrepresentation, negligent or intentional, made with actual malice within the meaning of section 822.2 as we have construed it above.

We refer to the specific misrepresentations alleged as to the city manager, as follows, that: (a) all of the building and construction by the city in the said leased area was done in a first class manner; (b) the graded area, the area not part of the lands covered by the supplement, but the lands within the area of said lease, were on engineered fill and that there were no foundation problems in connection with construction on the said land and engineered fills; (c) the said small craft harbor included in the lease, was the best berthing facility for small craft in Northern California; (d) the $1,200,000 loaned by the state to the city, and the funds provided under the written contract between the city and the state agency was all spent in accordance with the plans therefor, the master plan and addendum thereto, and that the small craft harbor and fill lands were built in accordance with the plans and addendum.

The first cause of action of the amended complaint further alleged that Schonfeld, in reliance on these representations, paid $60,400 to the city in January 1966 and as security took an assignment from VMI of an undivided one-half interest in the demised premises.

Schonfeld further alleged that the marina and its improvements suffered a variety of latent defects, as follows: 1) the inadequacy of the electric wiring at the harbor that was not in accordance with the various codes and city requirements applicable to wiring required by the state-city contract; 2) the water supply in the marina was improperly connected and leaked from improper construction and installation; 3) these water lines were used to provide drinking and domestic water for the various small craft using the facilities of the marina. Further, the

---

[9]Penal Code section 7 defines malice as importing "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act." "Actual malice" is defined by Civil Code section 48a, subdivision 4(d) in the context of defamation, as a "state of mind arising from hatred or ill will toward the plaintiff."

floats intended for berthing and constructed therefor, were, in part, improperly used to give the appearance of a breakwater, which improper usage has resulted in extensive damage and deterioration to the floats. In addition, the remaining berthing floats do not provide berthing for the 486 potential paying berthing locations provided by the master plan and addendum thereto and required by the state-city contract. The filled areas, being former tidelands within the leasehold area, were not properly filled for construction in accordance with the improvements to be installed by the lessee under the lease nor were said areas filled according to accepted engineering practices nor were foundations possible without serious risk. The filled areas were not, as represented, compacted or covered with engineered fill, but there was, in fact, a small crust on the surface of approximately 1½ feet in thickness to make it appear as if there were engineered fill and the balance of the fill consisted of spoils of soft, gooey bay mud from dredging, uncompacted. The fill of the tideland area in the leasehold was not made in accordance with the city's soil engineer's recommendations, to wit, compacted in small layers, desiccated, rolled and compacted between layers. The estimates of these engineers are that there is approximately a four-foot settlement to be anticipated in the uncompacted bay mud, half of which will occur within several years after any weight of any structure from any improvement or adequate mat of engineered fill is placed, such structure being those anticipated and required by the lease, as for example, the motel, coffee shop and chandlery building.

In addition, Schonfeld alleged that the city manager falsely represented to him in 1965 that the wrong type of foundation was built for the harbormaster building and that the city's soil engineer had made a mistake and was paying for the expense of moving the building. Finally, Schonfeld alleged that the city manager knew that portions of the marina were owned by the United States and subject to recreational restrictions as to the use of the land.

As indicated above, at the close of Schonfeld's case, the city manager was granted a nonsuit pursuant to Code of Civil Procedure section 581c. Accordingly, the only question before us is whether, disregarding conflicting evidence and indulging every legitimate inference in his favor, Schonfeld presented any substantial issue of fact for the determination of the jury (*Estate of Lances*, 216 Cal. 397, 400 [14 P.2d 768]; *Adams v. Henning*, 117 Cal.App.2d 376 [255 P.2d 456]).

As to the city manager's alleged misrepresentations that the marina was "a first class harbor" and "the best berthing facility in Northern California," the record indicates that these were, at most, a matter of opinion, as Schonfeld himself acknowledged. Schonfeld twice inspected the marina, which was in a primary construction phase in December 1965, and admitted that the city manager was not referring to an existing fact, but only to a future possibility. The city manager did not hold himself out as an expert on marinas, but indicated that the marina was completed according to the city's plans and specifications that had been approved by the state. Statements of opinion are considered as "dealer's talk" or "puffing" and are not actionable except under unusual circumstances neither alleged nor proved here (*Lee* v. *McClelland,* 120 Cal. 147 [52 P. 300]; *Rendell* v. *Scott,* 70 Cal. 514 [11 P. 779]; *Pacesetter Homes, Inc.* v. *Brodkin,* 5 Cal.App.3d 206, 211 [85 Cal.Rptr. 39]).

Schonfeld also offered no evidence to show that he reasonably relied on the city manager's statements. Rather, the evidence indicates that he regarded them as statements of opinion. Prior to Schonfeld's first meeting with the city manager, Schonfeld discussed the development of the marina with Johnson, the President of VMI, other VMI principals and several real estate brokers. At this time Schonfeld knew the marina was not completed. He was told by Johnson that VMI was broke and, therefore, delinquent on its rental payments to the city. Johnson also gave Schonfeld the marina brochure and other documents and represented that the marina was a "good harbor"; Johnson further indicated the need for additional fill on the mobile home park acreage and the need for special foundations. The brochure referred to the marina as "brand new top quality" with "first class berths." Schonfeld visually inspected the property, observed the berthing facilities, as well as the tilting and settling of the harbormaster building, and described these as "visible and serious." Schonfeld also saw the new piled foundations for the harbormaster building and boat repair building. After this initial visit, Schonfeld, Johnson and others went to the city manager's office. At this time, Schonfeld had not yet decided to loan any money to VMI. He returned to San Francisco with Johnson, who further promoted the matter.

■ Where evidence discloses that a plaintiff saw and inspected the property as to which the alleged misrepresentations were made, the natural inference is that he relied on his own observations. To overcome this inference, he must establish that he did not in fact inspect the property, or that he was justified in not making an inspection or in

relying on the other party, in spite of his own inspection *(Stockton* v. *Hind,* 51 Cal.App. 131, 137 [196 P. 122]). ▇▇ Schonfeld here failed to present any evidence to overcome this presumption or to indicate that his reliance was based on the representations of the city manager rather than those made by Johnson.

Schonfeld also failed to offer any evidence to support his allegation that the city manager represented that the marina had been built according to approved plans and specifications and concealed certain construction problems. Rather, the record indicates that the dike failure,[10] lack of breakwater and inadequate electric system, alleged by Schonfeld, were not discussed at the initial meeting in the city manager's office, and did not in fact arise until after the city manager left office in November 1966, and after Schonfeld had withdrawn from the marina project. Schonfeld's experts indicated that at the time here pertinent, the work was done according to the plans and specifications and approved by the state. Schonfeld admitted that he was una∵.are of the modifications in the original plans for the breakwater; he also observed the absence of the permanent breakwater that he knew was in the original plans. Furthermore, Schonfeld's February 23, 1966, letter to VMI rescinding his agreement and demanding repayment of his loan was based solely on the soil conditions at the marina.

The record also reveals that despite his inspection of the property and observation of the tilting harbormaster building, Schonfeld never read the city's soil reports or his own soil tests. He also read neither the lease between the city and the state nor the master lease, and did not read all of the materials and brochures that the city manager gave to him about the marina. The uncontroverted evidence indicates that all of the relevant facts were available to Schonfeld and no material facts concealed from him (cf. *Massei* v. *Lettunich,* 248 Cal.App.2d 68 [56 Cal.Rptr. 232]; *Barder* v. *McClung,* 93 Cal.App.2d 692 [209 P.2d 808]; *Williams* v. *Graham,* 83 Cal.App.2d 649 [189 P.2d 324]; *Rothstein* v. *Janss Investment Corp.,* 45 Cal.App.2d 64 [113 P.2d 465]). Nor was there any fiduciary relationship between Schonfeld and the city manager that gave rise to a duty to disclose (cf. *Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412 [159 P.2d 958]).

As to Schonfeld's allegation concerning the city manager's misrepresentation of the soil and foundation conditions under the tilting

---

[10]This issue was ruled irrelevant early in the trial after the state's senior harbor engineer testified that the dike had been properly constructed and no failure ever occurred.

harbormaster building, we have above summarized Schonfeld's observation and recognition of this problem as a serious one, and his failure to read either his own or the city's soil reports. Schonfeld testified that the city manager had told him that the city's engineers had made a mistake that would be corrected at the expense of the city. The uncontroverted evidence established that the basic reason for the tilt of the harbormaster building was the differential settlement of the floating foundation caused by the construction of the building partially over the dike[11] and partially over a subsurface of hydraulically dredged mud.[12] Thus, the city manager's alleged misrepresentations were true and confirmed by Schonfeld's own observations.

As to Schonfeld's remaining allegations concerning the city manager's misrepresentations of the general fill and soil conditions, Schonfeld's own testimony indicated that all the city manager said was that there were normal floating foundations. In December 1965, the city manager was not aware of any settlement problems except the one relating to the harbormaster building and the normal expected ones for a marina built on tideland. Thus, there was no evidence of any misrepresentation or malicious intent in the city manager's statements.

Schonfeld, however, attempts to argue that the necessary intent can be inferred from the city manager's concealment of the difference of opinions between the city and the state's soil experts on the need for piles in the foundation of the marina project. The state, whose experts considered the piles to be more prudent, prevailed, as the state had veto power over the construction funds. Accordingly, the city manager, who relied on the soil experts, considered that the difference of opinion had been settled and informed Schonfeld that since the city engineer had erred on the location of the harbormaster building, the matter would be corrected at the expense of the city. Again, the evidence is devoid of any indication that the city manager's representation was false or made with the actual malice required by Government Code section 822.2. At best, all of the city manager's representations were inactionable and innocent (*Graham* v. *Ellmore*, 135 Cal.App. 129, 132 [26 P.2d 696]).

As to Schonfeld's third allegation that the city manager misrepresented the state of the city's title to the marina by concealing a boundary dispute, a right-of-way dispute and the use restrictions in the deed from

[11]The dike consisted of engineered fill placed on hard clay after excavation of all bay mud.

[12]There, hydraulically dredged layers of mud had been allowed to dry up and were covered by several feet of engineered fill.

the federal government, the evidence also indicated that none of these matters existed or were known to the city manager at the time pertinent, and there was no evidence from which it could be inferred that the city manager made any representations with the actual malice as required by the statute. For example, the city's lease with VMI contained a map of the boundaries of the marina with a special notice that the boundary was approximate only.

As ably set forth in the respondents' brief, the evidence also failed to establish any fraudulent concealment or misrepresentation concerning the former federal surplus property portion of the marina or any concealment or misrepresentation with respect to the restrictions on the use of the former federal property which was part of the marina project. The representation made by the city in the state loan agreement was that "it had fee title not subject to any title defect or encumbrance that would preclude or interfere with the project contemplated in the State Loan Agreement." This representation was made in 1962 when the surplus federal property which the city acquired at one-half market value in 1960 was subject to a recreational restriction. The contemplated uses in 1962 were consistent with the restriction. After 1960 it was known to the city and the city manager that if the city decided to change the use of that particular property to a nonrecreational use, it could acquire the land free and clear of restrictions by paying one-half of its then market value, or exchanging other property.

In 1965, the city leased additional portions of the marina, including the bulk of the former federal surplus property, to VMI. The permitted usage on a portion of that property was a mobile home trailer park and gas station. Schonfeld contends that these uses were not recreational and, because of the reversionary clauses in the deed, operated as a cloud on the title to the land he was assigned by VMI in 1965 as security for his payment of $60,400. However no evidence was offered to show that: 1) the mobile home trailer park would have been built on the federal property; 2) the park would have violated the restrictive covenant; 3) the federal government would have exercised its rights; 4) the park in fact operated as a cloud on the title; or 5) the city manager was ever aware of the existence of any dispute on this subject before Schonfeld exercised his rights and abandoned his relationship with VMI.

To the contrary, Frank E. Sylvester, the representative of the federal agency with supervisory control over the 6.3 acres of federal land included in the marina project, testified that none of the projected

buildings to be constructed at the marina posed any problem under the use restrictions in the city's deed, except for the gas station, and perhaps the bowling alley, if these buildings were to be constructed on federal land. However, no evidence was offered by Schonfeld that these buildings were to be built on any part of the former federal land. Therefore, no dispute existed, and no knowing concealment was made by the city manager.

It is not necessary to discuss in detail Schonfeld's contention concerning a possible federal objection to a mobile trailer park or bowling alley (if constructed) since Sylvester testified that only a little corner of the entire parcel might be disapproved by the federal government and that there were alternative procedures for removing these restrictions if in fact they presented any obstacles to future development. Furthermore, as indicated above, the uncontroverted evidence indicates that Schonfeld withdrew from the marina not because of the alleged encumbrances and clouds on the city's title, but because the soil was unbuildable.

It is readily apparent from the above that Schonfeld failed to adduce any substantial evidence that the city manager made any of the alleged misrepresentations with the actual malice required to overcome the immunity provided by Government Code section 822.2. Accordingly, the nonsuit as to the city manager was properly granted and must be affirmed.

## II. THE JUDGMENT OF DISMISSAL

 We turn to Schonfeld's contention that the trial court's entry of a final judgment of dismissal in favor of the city on his first two causes of action, after sustaining the city's demurrers without leave to amend, was premature[13] as there had been no final determination of his fourth cause of action for declaratory relief against the city.[14] Citing *Bank of America* v. *Superior Court,* 20 Cal.2d 697 [128 P.2d 357], Schonfeld asserts that the judgment of dismissal violates the one final judgment rule. The city

---

[13]While it could be argued that Schonfeld can both appeal from a judgment and challenge its validity, the defect is a jurisdictional one (*Tsarnas* v. *Bailey,* 179 Cal.App.2d 332, 337-341 [3 Cal.Rptr. 629]) and if it had not been raised by Schonfeld; it would have been our duty to raise the matter on our own motion (cf. *Wilson* v. *Wilson,* 96 Cal.App.2d 589, 596-597 [216 P.2d 104]).

[14]On our own motion at oral argument, we augmented the record to include the pretrial order, which stated that the first cause of action was to be tried separately from the fourth. Subsequently, at Schonfeld's request, we augmented the record to include a subsequent order denying a motion to consolidate the first and fourth causes of action. Thus, we conclude that the court severed the fourth cause of action.

relies on *Aetna Cas. etc. Co.* v. *Pacific Gas & Elec. Co.,* 41 Cal.2d 785 [264 P.2d 5, 41 A.L.R.2d 1037]. *Aetna,* however, at pages 788-789, created an exception to the final judgment rule only where each cause of action deals with a different defendant (see also *Johnson* v. *Hayes Cal Builders, Inc.,* 60 Cal.2d 572, 578 [35 Cal.Rptr. 618, 387 P.2d 394]).

The second cause of action alleged, inter alia, that Schonfeld, as assignee of one-half of VMI's interest in the lease, was entitled to enforce the covenants of the lease, while the fourth cause of action for declaratory relief alleged that the assignment of the one-half interest that Schonfeld received from VMI was a valid mortgage and not an invalid assignment prohibited by the lease, and sought a declaration of Schonfeld's rights as a mortgagee, with respect to the covenants of the lease, and particularly the covenant to pay rent in the light of the city's breach, as alleged in the first two causes of action.

Our research has disclosed no case that considers the conflict between the one final judgment rule and the severance statute, Code of Civil Procedure section 1048. An eminent authority notes that ". . . in complicated cases the one final judgment rule proves to be a delusion, and appeals from separate final judgments in a single action continue to present the most difficult problems in the field of appellate procedure" (6 Witkin, Cal. Procedure, Appeal, § 37, pp. 4051 and 4052). And we have indicated that even though a cause of action is severed and tried separately, pursuant to Code of Civil Procedure section 1048, a separate judgment is not necessarily the result (*National Electric Supply Co.* v. *Mount Diablo Unified School Dist.,* 187 Cal.App.2d 418, 421-422 [9 Cal.Rptr. 864]).

*Bank of America* v. *Superior Court,* 20 Cal.2d 697 [128 P.2d 357], however, indicates that there cannot be a piecemeal disposition of the several counts of a complaint. The court said at page 701: ". . . when there is more than one count in a complaint, and a demurrer is interposed and sustained, and a judgment of dismissal entered, that there are as many separate judgments as there are counts in the complaint. That is not the law. There cannot be a separate judgment as to one count in a complaint containing several counts. On the contrary, there can be but one judgment in an action no matter how many counts the complaint contains. [Citations.]" The traditional exceptions to the rule were summarized in *Nicholson* v. *Henderson,* 25 Cal.2d 375 [153 P.2d 945] (at pp. 379-381), and the court also indicated (at p. 380) that "There may be other exceptions to this general rule . . . ." As indicated above, *Aetna* is

one such exception and in recent years, the courts have been creative in establishing another exception in the interests of justice and to prevent unnecessary delay and rebriefing by amending the judgment on appeal as needed and then construing the notice of appeal as from the judgment, as amended, pursuant to the liberal rule on premature civil appeals (Cal. Rules of Court, rule 2(c)). (See *Shepardson* v. *McLellan,* 59 Cal.2d 83, 89 [27 Cal.Rptr. 884, 378 P.2d 108]; *Carlson, Collins, Gordon & Bold* v. *Banducci,* 257 Cal.App.2d 212, 219 [64 Cal.Rptr. 915]; *Behr* v. *County of Santa Cruz,* 172 Cal.App.2d 697, 703 [342 P.2d 987]; *Gombos* v. *Ashe,* 158 Cal.App.2d 517, 524 [322 P.2d 933].)

The instant matter, however, obviously does not lend itself to this solution. However, given the workload of the appellate courts of this state, it would be an unnecessary and wasteful burden for all concerned to rigidly adhere to the one final judgment rule. This court has previously indicated that pursuant to federal practice, separate appealable judgments may be rendered on counts that present separate claims for relief (Fed. Rules Civ. Proc., rule 54(b); see *Reeves* v. *Beardall,* 316 U.S. 283 [86 L.Ed. 1478, 62 S.Ct. 1085]; *Sears, Roebuck & Co.* v. *Mackey,* 351 U.S. 427 [100 L.Ed. 1297, 76 S.Ct. 895]; *Cold Metal Process Co.* v. *United Co.,* 351 U.S. 445 [100 L.Ed. 1311, 76 S.Ct. 904]; *Wilson* v. *Wilson,* 96 Cal.App.2d 589, 596 [216 P.2d 104]). At the time of our decision in *Wilson,* no California court had recognized such an exception and *Gombos* v. *Ashe, supra,* and its progeny had not been decided. The test is whether the circumstances here presented are so unusual that postponement of the appeal until the final judgment on Schonfeld's fourth cause of action would cause so serious a hardship and inconvenience as to require us to augment the number of existing exceptions (*U.S. Financial* v. *Sullivan,* 37 Cal.App.3d 5, 11-12 [112 Cal.Rptr. 18]; *Western Electroplating Co.* v. *Henness,* 172 Cal.App.2d 278, 283 [341 P.2d 718]; see *Gombos* v. *Ashe, supra,* at p. 523). We respectfully disagree with the conclusion of the Fourth District that the question has been settled to the contrary in California (*U.S. Financial* v. *Sullivan, supra,* at p. 11), since no reported case has dealt with the application of the one final judgment rule to a cause of action severed pursuant to Code of Civil Procedure section 1048. Under that statute, a trial court has broad discretion to consolidate or sever causes of action and will not be reversed on appeal except for an abuse of discretion. Clearly, the declaratory relief cause of action here was properly severed as it raises issues separate and independent from those of the first two causes of action.

We hold, therefore, that in the instant case, since the first two causes of action were properly severed, a final judgment resulted, even though the independent fourth cause of action is still pending between the same parties.[15]

■ We turn, therefore, to the merits of Schonfeld's contentions concerning the judgment of dismissal as to his first two causes of action against the city for fraud and misrepresentation.

Schonfeld asserts that despite the clear and unambiguous language of Government Code section 818.8[16] and the cases discussed above, the city itself is liable, apart from the acts of its agents. This contention would make sense if the allegations of the complaint pertained to governmental liability not based on *respondeat superior* but on duties imposed on the entity, such as reasonable diligence in complying with legally proscribed safety standards or the entity's liability as an occupier of land.[17] His allegations in the instant complaint against the city, however, are based on *respondeat superior,* and the liability of the entity for the acts of its employee, the city manager.[18] Schonfeld has not cited, and our research has not disclosed, any case that has either expressly or impliedly, directly or indirectly, questioned or eroded the legislative mandate of section 818.8 as to absolute immunity of the public entity for the negligent or intentional misrepresentations of its employees (*Brown* v. *City of Los Angeles,* 267 Cal.App.2d 849 [73 Cal.Rptr. 364]). As indicated above, it is now also clear that fraudulent concealment is within the immunity provided by Government Code section 818.8 (*Warner Constr. Corp.* v. *City of Los Angeles,* 2 Cal.3d 285, 293-294 [85 Cal.Rptr. 444, 466 P.2d 996]; *Universal By-Products, Inc.* v. *City of Modesto,* 43 Cal.App.3d 145, 154 [117 Cal.Rptr. 525]).

Applying the above rules to Schonfeld's first cause of action against the city for fraud and misrepresentation, it is clear that the city's demurrer was properly sustained without leave to amend as the city was

---

[15]This is the more reasonable and efficient solution here, particularly since both parties indicated at oral argument that they preferred to have the matter determined on its merits.

[16]As indicated above, Government Code section 818.8 provides: "A public entity is *not liable for an injury caused by misrepresentation by an employee of the public entity,* whether or not such misrepresentation be negligent or intentional."

[17]Liability of the public entity in these areas, independent of whether or not its employees are also liable, is expressly provided by Government Code sections 815.6, 830-840.6, and 855.

[18]It is not disputed that the city manager was acting within the scope of his employment.

immune from the tort liability alleged pursuant to Government Code section 818.8.

■ We turn next to the second cause of action in contract, which attempts to predicate the city's liability to Schonfeld on his asserted status as a third party beneficiary of the state loan agreement and as an assignee of the one-half interest in the master lease.

However, the sole allegations in the second cause of action relating to the city's title to the marina property are that the city warranted that it had a fee title and that the title had been examined and found acceptable by the city attorney. Schonfeld has failed to allege that either of these warranties was false. The allegations of the incorporated first cause of action that deal solely with the actual construction of the marina, neither directly nor by necessary inference establish the falsity of the representations contained in the state loan agreement regarding the title of the marina property. As the requisite falsity was not established by the allegations of the second cause of action, the trial court properly sustained the general demurrer to the second cause of action with respect to the state loan agreement.

Civil Code section 1559 provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." As Schonfeld was not a party to the state loan agreement, he must plead and prove that "the agreement, to which appellant was not a party, was made for his benefit" (*Levy* v. *Bellmar Enterprises,* 241 Cal.App.2d 686, 689 [50 Cal.Rptr. 842]). ■ "The test in deciding whether a contract inures to the benefit of a third person is whether an intent to so benefit the third person appears from the terms of the agreement . . . ." (*Luis* v. *Orcutt Town Water Co.,* 204 Cal.App.2d 433, 442 [22 Cal.Rptr. 389].) (See also *City & County of San Francisco* v. *Western Air Lines, Inc.,* 204 Cal.App.2d 105, 120, 121 [22 Cal.Rptr. 216].) ■ Schonfeld's second cause of action falls far short of alleging the elementary requirement articulated in *Levy, supra,* or meeting the test of *Luis, supra.* The second cause of action does not allege that the state loan agreement in general or the alleged representations were made for Schonfeld's benefit. In fact, since the loan agreement defines only the rights and obligations of the public contracting entities, exactly the opposite inference must be drawn. Furthermore, a reading of the state loan agreement (incorporated by reference into the complaint), in light of *Luis* and *Levy,* reveals that Schonfeld is in fact not

a third party beneficiary of the state loan agreement since "an intent to so benefit the third person . . . [does not appear] from the terms of the agreement" *(Luis, supra),* "the terms of such agreement do not indicate that the parties to it contemplated or intended expressly to benefit plaintiff" *(Luis, supra)* and " 'an intent to make the obligation inure to the benefit of the third party . . . [is not] clearly manifested by the contracting parties' " *(Western Airlines, supra,* 204 Cal.App.2d 105, at pp. 120-121).

Accordingly, it is not necessary to discuss in detail the remaining allegations of the second cause of action that attempt to predicate liability relating to alleged breaches by the city of certain express and implied covenants in the 1964 lease between the city and VMI, to which Schonfeld was not a party.

We turn next to the portion of the second cause of action which alleged that Schonfeld was an "assignee of a one-half interest in the lease for security" of a note payable to VMI. The law in California, however, is set forth by Civil Code section 2924 that provides, in pertinent part: "Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage . . . ."

It has long been settled in this state that a lessee's assignment of his leasehold interest as security for a money obligation creates a mortgage interest in the security holder. In *Commercial Bank* v. *Pritchard,* 126 Cal. 600 [59 P. 130],[19] the California Supreme Court said: "It is provided by the code of this state that every transfer of an interest in property, other than in trust, made as security for the performance of another act, is to be deemed a mortgage . . . . (Civ. Code, sec. 2924.) The court having found that Pritchard assigned the lease to appellant as security for the payment of the six hundred dollars, it was clearly a mortgage within the definition just quoted" (p. 604).

---

[19]In 1855, the Supreme Court held that there is no privity of contract between a lessor and a mortgagee of the lessee's leasehold interest and, consequently, the lessor could not bring an action against such a mortgagee for breaches of covenants in the lease. *(Engels, Hooper & Co.* v. *McKinley,* 5 Cal. 153.) In 1860, the Supreme Court reaffirmed this proposition in *Johnson* v. *Sherman,* 15 Cal. 287: "[A] mortgagee . . . is not liable as assignee upon the covenants of a lease" (p. 294). (See also *Northwestern Mut. Life Ins. Co.* v. *Security S. & T. Co.,* 261 F. 575, 579, 580, adopting the reasoning and conclusion of *Johnson.)*

We conclude that the trial court properly sustained the city's demurrer to the second cause of action. Accordingly, it is not necessary to discuss the remaining contentions of the parties.

The judgment of dismissal and the judgment of nonsuit are affirmed.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied September 3, 1975, and appellant's petition for a hearing by the Supreme Court was denied October 1, 1975.