[Civ. No. 60171. Second Dist., Div. Three. Aug. 28, 1981.]

ROY BROTHERS DRILLING COMPANY, Plaintiff, Cross-defendant and Appellant, v.
ROBERT E. JONES et al., Defendants, Cross-complainants and Respondents.

COUNSEL

John A. Weyl for Plaintiff, Cross-defendant and Appellant.

Robert E. Jones and Beverly A. Jones, in pro. per., for Defendants, Cross-complainants and Respondents.

---

**OPINION**

**POTTER, Acting P. J.**—Plaintiff and cross-defendant Roy Brothers Drilling Company appeals from a judgment that it "take nothing by way of its Complaint" rendered after the motion of defendants and cross-complainants Robert E. Jones and Beverly A. Jones for summary judgment was granted.

The complaint sought recovery of $26,139.65 for services rendered in the construction of improvements upon real property of defendants at "agreed and reasonable" prices for various services described as "to drill and insert casing and related works of improvement." Appellant's opening brief states that said services were "in connection with the building of a residence in Malibu, California, to drill holes in connection with the foundation work of such residence." As required, the complaint alleged that plaintiff was "duly licensed as a contractor under the laws of the State of California at all times herein mentioned during the performance of its contract with the Defendants." In their answer, defendants denied this allegation and concurrently moved the court for a summary judgment based upon plaintiff's lack of the required license.

In his declaration in support of the motion for summary judgment, defendant Robert E. Jones testified that the services performed by plaintiff were limited to "the drilling of caisson holes, excavation for the installation of the basement and the drilling of holes for the installation of retaining walls" and specifically did not relate to "the installation of the sanitation system installed in connection with the construction of the residence on the property."

Attached to the Jones declaration as exhibits were: (1) a statement dated October 2, 1978, from plaintiff corporation, showing contractor's license number 273804 for the claimed balance of $26,139.65; (2) a certified statement from the Contractors' State License Board showing that license number 273804 was issued to Roy Brothers Drilling Company, a corporation, on January 31, 1972, and that the sole class of license held was "C-42 (Sanitation System)"; (3) Jones' November 30, 1978, letter inquiry to the Contractors' State License Board regarding

"the specific specialty contractor's license required" to drill "holes for caissons for foundations," and for "the setting of steel casings for later installation of steel reinforced caissons" involving "the use of a rotary drilling rig, and, occasionally, a bulldozer to remove boulders and cobbles" and (4) the registrar's response of December 27, 1978, stating: "It is our administrative interpretation of the Contractors License Law and the Rules and Regulations of the Contractors' State License Board that the C-61, Drilling, classification is proper to engage in the work as you describe it."

In opposition to the motion, plaintiff filed a declaration of its president, Herbert Darrell Roy. Roy's declaration alleges that he personally has held a C-42 contractor's license since in or about the year 1954, and that the predecessor partnership of plaintiff corporation, called Roy Brothers Drilling Company, was similarly licensed. While so licensed, the partnership received a letter, dated February 28, 1957, from an examiner with the registrar of contractors responding to a prior partnership inquiry as follows: "In reply to your letter of February 25, 1957, your C-42 license would cover any type of drilling except water well drilling. You may drill test holes, draining holes, etc." Mr. Roy agreed that the plaintiff was hired "to drill holes in connection with the foundation work to be performed" in the construction of defendants' home, and averred (1) that all such work was done at the request of defendant Robert E. Jones, and (2) that neither defendant complained about the work performed.

After submission of the motion, the court rendered its memorandum opinion. The court noted the apparently conflicting letter opinions from the Contractors' State License Board personnel, relied upon by the opposing parties, but found the applicable provisions of the California Administrative Code determinative, and ruled: "Motion for summary judgment on complaint is granted."

Prior to the rendition of the memorandum opinion, defendants filed a cross-complaint against plaintiff for breach of contract and fraud arising out of the contract between them and the performance thereof,[1] and plaintiff answered generally denying its allegations. In its opinion, the court referred to the cross-complaint as follows: "The cross-complaint

---

[1]In view of the fact that the record revealed the existence of a counterclaim but did not disclose either the parties or the subject matter thereof, this court augmented the record by having the entire superior court file transmitted to this court pursuant to California Rules of Court, rule 12(a).

does not lend itself to summary judgment and is not involved in the decision."

Despite the fact that the cross-complaint remained pending and at issue, the court entered the judgment upon the complaint that plaintiff "take nothing." This appeal followed.

 The judgment was premature and in violation of the one-judgment rule. As stated 6 Witkin, California Procedure (2d ed. 1971) Appeal, section 46, page 4060: "If the court attempts a piecemeal disposition of each claim or issue by rendering a number of 'final judgments,' the earlier judgments are premature, void and nonappealable.

"Thus, an appeal will be dismissed where a purported final judgment is rendered on a complaint without adjudicating the issues raised by a cross-complaint. [Citations.]"

 Besides noting that the judgment was premature, this court recognized that "[t]he effect of the one judgment rule has...been avoided in several cases 'in the interests of justice and to prevent unnecessary delay...by amending the judgment on appeal as needed and then construing the notice of appeal as from the judgment, as amended, ...' (*Schonfeld* v. *City of Vallejo* (1975) 50 Cal.App.3d 401, 418 [123 Cal.Rptr. 669]; see also *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 524 [322 P.2d 933].)" (*DeGrandchamp* v. *Texaco, Inc.* (1979) 100 Cal.App.3d 424, 432 [160 Cal.Rptr. 899].)

The court also was cognizant of the fact that in *Williams* v. *Travelers Ins. Co.* (1975) 49 Cal.App.3d 805, 808, footnote 1 [123 Cal.Rptr. 83], such an amendment was found appropriate on the basis of the court's conclusion that a cross-complaint, the pendency of which destroyed the finality of the judgment, could on the basis of the record be "deemed abandoned."

In view of *Williams*, the court advised the parties of the jurisdictional defect and suggested the possibility that defendants had abandoned their cross-complaint and would consent that it be deemed abandoned so that the purported judgment could be amended to make it dispose of the cross-complaint as well as the complaint. In response to this inquiry, defendants and cross-complainants filed their written consent that the judgment be so amended.

In view of such consent, the judgment below, if affirmed, can be amended so as to dispose of the cross-complaint and thus finally determine the action. So amended, it is an appealable final judgment. (*Ibid.*) The merits of the appeal have been thoroughly briefed and unnecessary delay would result from a dismissal of the appeal. Accordingly, we address the merits.

## Contentions

Plaintiff contends that: (1) defendants' moving papers are insufficient in that they fail to state that the facts are within the personal knowledge of declarant and consist mostly of inadmissible hearsay; (2) plaintiff was properly licensed to perform the work contracted for, and (3) plaintiff substantially complied with the license requirement and defendants would be unjustly enriched if recovery were denied.

Defendants controvert all of plaintiff's contentions.

## Discussion

### Summary

Defendants' declarations showed the declarants' personal knowledge of the nonhearsay matters therein stated. Insofar as it showed the license status of the plaintiff, the certificate of the registrar was not hearsay and what it shows is admitted by plaintiff in any event. The admitted facts establish that plaintiff was not duly licensed to perform the work contracted for and that plaintiff did not substantially comply with the license requirement. Under the circumstances, the summary judgment was properly granted.

### Defendant's Declaration Adequate

■ The declaration of Robert E. Jones contains no statement in accordance with Los Angeles Superior Court Law and Motion Policy Memorandum, section 72, stating that "the facts set forth are personally known to the declarant and that he has firsthand knowledge of the same." The requirement of the law in this respect is stated in Code of Civil Procedure, section 437c, as follows: "Supporting and opposing affidavits or declarations shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirma-

tively that the affiant is competent to testify to the matters stated therein."

The requirement of this section is not that the declarant recite the conclusion that he can competently testify but that he allege facts showing his competence. The declaration of Robert E. Jones clearly shows his competence to testify with respect to the negotiation of the contract with plaintiff which he "personally handled" and to establish the foundation for documents comprising: (1) a bill for services which he "received" from plaintiff, (2) letter inquiries sent by him to the Contractors' State License Board, and (3) replies which he "received" from the board. The only valid objection to the exhibits, therefore, is to any hearsay contained therein.

The Jones declaration is likewise sufficient to establish the agreed scope of the work. Certainly, a party who "personally handled all of the negotiation by which plaintiff herein was retained to perform" has personal knowledge of the "oral agreement...by which Roy Brothers Drilling Co. agreed to drill the holes necessary to install caissons and to insert casing and related works of improvement" for the foundation of defendants' home. In any event, plaintiff's opposition declaration conceded that the nature of the work was "to drill holes in connection with the foundation work to be performed...."

■ *The Contracted Work Was Not Within the Scope of Plaintiff's Specialty License*

The uncontradicted evidence showed that plaintiff, its partnership predecessor and its principal, had been licensed only as specialty contractors pursuant to the provisions of California Administrative Code, title 16, section 754.4 which, as amended August 3, 1972, provides: "A sanitation system contractor is a specialty contractor whose contracting business is the execution of contracts to fabricate and/or install concrete and masonry sewer, sewage disposal and drain structures and lay cast-iron, steel, concrete, vitreous and nonvitreous pipe for sewers, sewage disposal, drains and irrigation, including the excavating, grading, trenching, backfilling, paving and surfacing *only in connection therewith*; the fabrication and erection of sewage disposal plants, cesspools and septic tanks and the appurtenances thereto, in such a manner, that sewers, sewage disposal, drains and cement pipe laying can be fabricated and installed." (Italics added.)

This regulation was issued by the State License Board pursuant to the authority granted it by section 7008, Business and Professions Code, which authorizes the board to "make such rules and regulations as are reasonably necessary to carry out the provisions" of chapter 9 of such code. The interpretation of these regulations intended by the board is stated in title 16, section 701, as follows: "The board interprets the primary intent of the Legislature in enacting Chapter 9, Division 3 of the Business and Professions Code to be the protection of the health, safety, and general welfare of all those persons dealing with persons engaged in the building contracting vocation, and the affording to such persons of an effective and practical protection against the incompetent, inexperienced, unlawful and fraudulent acts of building contractors with whom they contract.[2] All rules, regulations or orders adopted by the Board or its registrar shall be interpreted and construed in light of the policies announced herein."

The creation of specialty classifications was specifically authorized by Business and Professions Code, section 7059, which provides: "The board may adopt reasonably necessary rules and regulations to effect the classification of contractors in a manner consistent with established usage and procedure as found in the construction business, and may limit the field and scope of the operations of a licensed contractor to those in which he is classified and qualified to engage, as defined by Sections 7055, 7056, 7057, and 7058. A licensee may make application for classification and be classified in more than one classification if the licensee meets the qualifications prescribed by the board for such additional classification or classifications. The application shall be accompanied by the application fee fixed by this chapter. No license fee shall be charged for an additional classification or classifications.

"Nothing contained in this section shall prohibit a specialty contractor from taking and executing a contract involving the use of two or more crafts or trades, if the performance of the work in the crafts or trades, other than in which he is licensed, is *incidental and supplemental* to the performance of work in the craft for which the specialty contractor is licensed." (Italics added.)

The C-42 classification is one of 36 specialty classifications, one of which, C-61, is a limited specialty covering specialty contracting in

---

[2]This interpretation is correct. (*Scientific Cages, Inc.* v. *Banks* (1978) 81 Cal.App.3d 885, 887-888 [146 Cal.Rptr. 780]; *Davis Co.* v. *Superior Court* (1969) 1 Cal.App.3d 156, 158 [81 Cal.Rptr. 453].)

"other than any of the specialty-contractor classifications listed" as particularly described in the application for license. Like section 754.4 defining the sanitation systems contractor's specialty, the limited specialty classification (§ 732.1) recognizes the propriety of specialty contractors performing incidental work outside their classification, by providing in this respect: "Nothing contained in this section shall prohibit a specialty contractor, other than a specialty contractor classified and licensed in Classification C-61, Limited Specialty, from performing work within the field and scope of the operations of Classification C-61, Limited Specialty, provided the work is consistent with established usage and procedure as found in the construction business and is *related to the specialty-contractor classification* in which the specialty contractor is classified and licensed." (§ 732.1, subd. (e).) (Italics added.)

All the foregoing legislation and regulations are consistent. As applied to sanitation systems contractors, they are permitted by California Administrative Code, title 16, section 754.4, to do excavation work "only in connection" with "the execution of contracts to fabricate and/or install concrete and masonry sewer, sewage disposal and drain structures and . . . cast-iron steel, concrete, vitreous and nonvitreous pipe for sewers, sewage disposal, drains and irrigation." Such limited excavation clearly "is incidental and supplemental to the performance of work in the craft for which the specialty contractor is licensed" as authorized by Business and Professions Code section 7059 and is "related to the specialty-contractor classification in which the speciality contractor is classified and licensed" as required by section 732.1 of title 16. Excavation, which is not so connected, so incidental and supplemental and so related, is not within the scope of a sanitation systems contractor's speciality license.

Business and Professions Code, section 7031 provides: "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract, except that such prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029."

Since, as above demonstrated, a C-42 specialty contractor's license does not authorize the holder to engage in excavation which is not in

connection with and "incidental and supplemental to" the execution of contracts for the constructions of sewers, sewage disposal drains or irrigation works, it is clear that the holder of such a license is not "duly licensed" "for the performance" of other excavation work.

The uncontroverted facts clearly establish that the drilling of the holes necessary to install caissons for the support of the foundation for defendants' home was in no way incidental and supplemental to, or performed in connection with, any fabrication or installation of sewer, sewage disposal, drain or irrigation work. It was not, therefore, excavation for which plaintiff was duly licensed.

Plaintiff's reliance upon the February 28, 1957, letter from the registrar of contractors is misplaced. Like the letter which defendants attached to the Jones declaration, it is a hearsay statement of opinion with respect to a matter of law. Moreover, without a copy of the letter to which it is a reply, it is impossible to ascertain what it means. The letter of inquiry from plaintiff's predecessor partnership may have described drilling activities, all of which were in connection with sewer, drainage or irrigation projects. The "test holes, draining holes, etc." referred to may well have been parts of such a project.

*No Substantial Compliance With
The Licensing Requirement Shown*

Plaintiff does not question the general rule that a contractor who is not duly licensed to perform the work contracted for cannot recover any compensation therefor. As stated by our Supreme Court in *Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 151-152 [308 P.2d 713]: " . . . . Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of the state [Citation.] Moreover, even if we could take into account unjust enrichment of defendant, it is not at all clear that, had it reached the issue, the trial court would have found defendant indebted to plaintiff beyond what it had already paid. [¶] . . . As we have already pointed out, the courts may not resort to equitable considerations in defiance of section 7031."

Plaintiff claims, however, that the facts shown invoke "the substantial compliance doctrine as adopted in *Gatti* v. *Highland Park Builders, Inc.* [1946] 27 Cal.2d 687." Other contractor cases relied upon by plaintiff include *Latipac, Inc.* v. *Superior Court* (1966) 64 Cal.2d 278, 281 [49 Cal.Rptr. 676, 411 P.2d 564]; and *Vitek, Inc.* v. *Alvarado Ice Palace, Inc.* (1973) 34 Cal.App.3d 586, 590 [110 Cal.Rptr. 86].

The substantial compliance doctrine is well established. Cases which have applied it, however, have involved a situation where some entity or person responsible for the execution of the work was duly licensed when the work was done and no question was raised as to the sufficiency of the performance. In *Gatti*, the situation invoking the doctrine was described by the court as follows (27 Cal.2d at p. 690): "The inequity of defendant's position stands out markedly when we consider that defendant would have plaintiffs—who are licensed individually and are also licensed as copartners with a third person, and who have satisfactorily performed work of the reasonable value of $3,435.50—go out of court with nothing, on the ground that they did not have a separate partnership license issued to them in consequence of the modified arrangement made with defendant for completion of the work under the admittedly valid contract originally made with Gatti individually."

In *Latipac*, the plaintiff "possessed a valid contractor's license at the time the parties executed the contract," (64 Cal.2d at p. 280) and performed for 15 months before the license expired. Plaintiff continued to perform for several months before it renewed its license but did renew it two months after completion. The court said (*id.*, at p. 281): "Although plaintiff thus failed literally to conform to the commands of section 7031 of the Business and Professions Code, the courts of this state have not insisted upon such strict observance if it would transform the statute into an 'unwarranted shield for the avoidance of a just obligation.' (*Gatti* v. *Highland Park Builders, Inc.* (1946) 27 Cal.2d 687, 690 [166 P.2d 265].) If the facts clearly indicate that the contractor has 'substantially' complied with the statute and that *such compliance has afforded to the obligor the protection contemplated by the statute*, we have rejected the obligor's attempt to escape liability. (*Gatti* v. *Highland Park Builders, Inc. supra; Weiman* v. *Superior Court* (1959) 51 Cal.2d 710 [336 P.2d 489]; *Citizens State Bank* v. *Gentry* (1937) 20 Cal.App.2d 415 [67 P.2d 364]; *Oddo* v. *Hedde* (1950) 101 Cal.App.2d 375 [225 P.2d 929].) As Justice Traynor has stated, the test must be whether the contractor's 'substantial compliance with the licensing requirements satisfies the policy of the statute.'" (Italics added.)

*Vitek* involved a situation where the contractor had not renewed his license at the time of execution of the contract but did so prior to any performance.

The doctrine of substantial performance, as stated in *Gatti, Latipac*, and *Vitek* has no application to the circumstances of this case. At the time plaintiff did the work involved, no one connected with plaintiff had at any time been duly licensed to perform it. The policy of Business and Professions Code section 7031 has not, therefore, been satisfied. Defendants have not been afforded "the protection contemplated by the statute" (*Latipac, supra*, 64 Cal.2d at p. 281) which would have resulted if plaintiff had demonstrated to the Contractors' State License Board the requisite experience to qualify for the required specialty license.

Moreover, defendants do not concede that the work was satisfactorily completed. Their cross-complaint charged numerous breaches of plaintiff's obligation under the construction contract, and the circumstances under which they have consented that it be deemed abandoned do not imply that it is without merit.

We conclude from the foregoing that defendants' motion for summary judgment was properly granted. Accordingly, we accept defendants' consent and deem the cross-complaint abandoned for the purpose of permitting the trial court judgment to be amended so as to make it a final judgment disposing of the entire action. Having done so, we will affirm.

The trial court judgment is amended to include a further paragraph as follows: "It is further ordered and adjudged that cross-complainants take nothing by way of their cross-complaint." So amended, the judgment is affirmed.

Cobey, J., and Lui, J., concurred.