[Civ. No. S. C. 14. Second Appellate District, Division One.—April 19, 1937.]

CITIZENS STATE BANK OF LONG BEACH (a Corporation), Respondent, v. FRANCIS H. GENTRY, Executor, etc., Appellant.

GEO. E. BARTLETT, Respondent, v. FRANCIS H. GENTRY, Executor, etc., Appellant.

Eugene C. Campbell for Appellant.

Linnell & Linnell and Irving Smith for Respondents.

WHITE, J., *pro tem.*—On March 10, 1933, defendant, Laura M. LaShell, owned two buildings in Long Beach, one a warehouse and the other a theater, both of which were

damaged by the earthquake of that date. On April 6, 1933, defendant entered into a written contract with plaintiff Geo. E. Bartlett for the reconstruction of the theater building "on the basis of labor and material plus ten per cent of cost". At approximately the same time, defendant also entered into an oral contract with plaintiff Bartlett for the reconstruction of the warehouse property, under the same terms and conditions as set forth in the written contract covering repair of the theater building. The work of reconstruction on both buildings commenced shortly after the contracts were made and continued until both structures were completed. Work on the warehouse was completed July 19, 1933, and on the theater on August 17, 1933.

On May 9, 1933, the contractor, Bartlett, assigned his prospective compensation for repairing both buildings to the plaintiff Citizens State Bank of Long Beach. Defendant owner accepted both assignments and agreed in writing to pay to the bank the moneys so assigned. On October 18, 1933, plaintiff contractor filed a claim of lien against the theater building in the sum of $3,094.89 for his services in repairing that building.

On October 27, 1933, plaintiff bank commenced its action against defendant to recover the moneys covered by the assignments of May 9, 1933. On January 15, 1934, the contractor, Bartlett, commenced an action to foreclose his claim of lien against the theater building.

Defendant filed answers to both complaints, and set up counterclaims alleging that plaintiff Bartlett was indebted to defendant in the sum of $140 for rent of certain premises leased by the latter to the former; that during the construction work defendant advanced to plaintiff contractor some $2,000 more than he actually paid out for labor and materials; that plaintiff contractor failed to perform the work in a workmanlike manner, was dilatory, inefficient, negligent and neglectful, all of which allegedly damaged defendant in the sum of $5,000; and finally, that plaintiff contractor wilfully included in his claim of lien work and materials not performed or furnished for the property described in the claim of lien.

The two actions were consolidated for trial. During the progress of the trial the court appointed a referee "to hear and decide the whole issue regarding the amount of com-

pensation claimed by plaintiff in these entitled actions, respectively, and the claims made by defendant in her counterclaim No. 2 set forth in the answer in said case No. C–6009, including a determination of the charges, credits and offsets and all other matters bearing on the cost of the work on the respective buildings, and the reasonable value of the various items of labor and materials bestowed upon such work''. Hearings were had before the referee, at which time evidence was taken on the items of charge made by plaintiff contractor against defendant and as to all claims of credit for payments made by defendant to the contractor. The referee filed a report, and subsequently tendered an amended report to the court. He was also called as a witness and testified at the trial, which was resumed upon the filing of the referee's reports.

At the conclusion of plaintiff's case defendant moved for a nonsuit in each action, on the ground that plaintiff contractor had no contractor's license from the state of California at the time the action arose, but had nevertheless carried on the building operations without such license. In each case defendant's motion for a nonsuit was denied. At the conclusion of the trial the court rendered a judgment in favor of plaintiffs, and subsequently handed down a *nunc pro tunc* amended judgment and decree of foreclosure, by the terms of which it was ordered that plaintiffs recover from defendant $2,244.93, with interest and costs. It was further adjudged that the amount due plaintiffs for work done by plaintiff Bartlett on the theater building was the sum of $1990.17, plus interest and costs, and that plaintiffs have a lien upon the theater property for that amount, and that said property be sold to satisfy such lien. From the judgment aforesaid defendant prosecuted this appeal. Laura M. LaShell, the defendant, died pending the appeal, and her executor, Francis H. Gentry, was substituted as defendant and appellant.

Appellant's first ground of attack upon the judgment is that the court erred in denying the motions for nonsuit. It is earnestly urged that the uncontradicted evidence shows that the construction work in question was carried on from April to August, 1933, and that the contractor's state license as a building contractor expired June 30 of that year. In this regard the record shows that plaintiff Bartlett was a duly

licensed contractor for the fiscal year ending June 30, 1933. It appears that prior to that date defendant Bartlett formed a corporation, known as Geo. E. Bartlett Construction Co., and on June 28, 1933, prior to the expiration of plaintiff Bartlett's license, application was made to the registrar of contractors for a renewal of contractor's license. Such application was accompanied by a letter, stating in part as follows: ''We would like the renewal issued to Geo. E. Bartlett Construction Co., Ltd., a corporation. Heretofore the license has been carried in Mr. Bartlett's name.'' After declaring it to be unlawful for any person to engage in the business or act in the capacity of a contractor within this state without having a license therefor, and providing a penalty for so doing, the provision of the act pertinent hereto declares: ''No person engaged in the business or acting in the capacity of a contractor as defined by section 3 of this act, shall bring or maintain any action in any court of this state for the collection of compensation for the performance of any act for which a license is required by this act without alleging and proving that such person was a duly licensed contractor at the time the alleged cause of action arose.'' (Stats. 1929, chap. 791; Stats. 1931, chaps. 578, 582; Stats. 1933, chap. 573.)

It is the contention of appellant that a contract made contrary to the terms of a law designed for the protection of the public and prescribing a penalty for the violation thereof is illegal and void, and no action may be brought to enforce such a contract. (*Berka* v. *Woodward,* 125 Cal. 119 [57 Pac. 777, 73 Am. St. Rep. 31, 45 L. R. A. 420].) Undoubtedly, the rule in this state is that when it appears there is a violation of a statute designed for the protection of the public, with a penalty prescribed for the violation thereof, that such penalty is the equivalent of an express prohibition, and that a contract made contrary to the terms thereof is void. However, in this case it is undisputed in the evidence that at the time the contract in question was made plaintiff Bartlett possessed the requisite contractor's license. While it is true the same expired during the progress of the work under the contracts, still the plaintiff contractor carried on and completed the work under the auspices of a corporation organized by him, bearing his name, and in which he was the dominant and controlling factor; and which corporation possessed the necessary contractor's license under the state law. In none

of the cases cited by appellant did the party suing have a license at the time of entering into the contract and then make an application for a renewal in any manner, such as was done here. In our opinion, where a manifestly unjust and inequitable result would follow a holding that plaintiff contractor was without capacity to sue on his contract, the individual plaintiff in whose name the license stood at the time the contract was made and the corporate entity organized by him in whose name the license stood at the time the cause of action accrued, should be considered as one. (*Minifie* v. *Rowley,* 187 Cal. 481 [202 Pac. 673]; *Wenban Estate, Inc.,* v. *Hewlett,* 193 Cal. 675 [227 Pac. 723].) Under the circumstances disclosed by the record in this case, we are of the opinion that the finding of the trial court that plaintiff contractor Bartlett was licensed was justified, and that the motions for a nonsuit were properly denied.

Appellant next urges a reversal on the ground that the findings of fact with reference to her alleged indebtedness to respondents are without support in the evidence and "inherently insufficient". With this claim of appellant we cannot agree. The trial court submitted to the referee "the whole issue regarding the amount of compensation claimed by plaintiff . . . and the claims made by defendant in her counterclaim No. 2 . . . including a determination of the charges, credits and offsets and all other matters bearing upon the cost of the work on the respective buildings, and the reasonable value of the various items of labor and materials bestowed upon such work". As hereinbefore observed, the referee held hearings, took evidence, and not only made findings which he reported to the court, but was also called as a witness at the trial, where, upon examination, he amplified his reports and explained in detail the manner in which he arrived at his conclusions upon the issues submitted to him. The referee's reports and the documentary evidence upon which his findings were based were introduced into evidence. With the record thus constituted, surely it cannot be said that the court's failure to make more specific findings in respect to the issues of fact determined in the referee's reports constituted error so prejudicial to defendant that a new trial should be ordered. In the case before us, the issues between the parties were framed and disposed of in the report of the referee, adopted by the court, in such a

manner as to clearly show the method by which the results set forth in the findings were reached, and the appellant was thereby enabled to present her grievances to the appellate tribunal. This court must assume, in support of the judgment, that every controverted fact was determined in favor of the respondents, and even if there were both the disposition and the power on our part to reexamine the entire account between these parties, the presumption in favor of the action of the trial court would ordinarily render such action upon our part wholly nugatory. Under the Constitution (art. VI, sec. 4½), our power to reverse a judgment is restricted to cases where this court, upon the whole record, can say that there has been a miscarriage of justice in the trial court. Any procedure or record from which it can be intelligently ascertained what the issues were as to the controverted items and how these issues were disposed of by the trial court, will suffice for the purpose, whether the matter appears from the findings, the judgment, the reporter's transcript, or a bill of exceptions showing the controversy and the disposition thereof. In the case at bar it can easily be ascertained by referring to the reports of the referee and the exhibits in augmentation thereof, as well as the testimony of the referee, exactly how the referee and the court found upon each item of cost and each item of credit claimed by the parties to this action. What we have just said applies with equal force to the claimed insufficiency of the evidence to support the findings as to respondent bank. The contention that appellant was "left absolutely in the dark as to how the court arrives at these several general conclusions", and that she was entitled to know the method employed by the court in arriving at such conclusions, in view of the entire record in this case, is without merit.

█ Appellant's next claim of error is that under the contracts here in question respondent contractor was not entitled to recover for equipment used in the reconstruction work. However, in our opinion, in a "cost-plus" contract operating expenses such as are occasioned by the use of equipment are included as a part of the cost of material. (*Johnson* v. *Kusminsky*, 287 Pa. 425 [135 Atl. 220]; *Lytle, Campbell & Co.* v. *Somers, F. & T. Co.*, 276 Pa. 409 [120 Atl. 409, 27 A. L. R. 41].) In this connection, and also with reference to appellant's claim that the trial court erred in allowing as

charges against the construction cost, premiums incurred for compensation and liability insurance, it may be said that all the items concerning equipment, as well as insurance premiums, were included in weekly statements furnished appellant by respondent contractor, and she paid the said charges knowingly and without any fraudulent concealment on the part of the contractor. It seems to us that when these weekly statements were furnished to appellant, if there was any doubt about the charges for equipment and insurance premiums, appellant should have demanded an explanation of the same before she paid them.

Our examination of the record impresses us with the fact that there were no errors in the rulings of the trial court upon the admissibility and rejection of evidence.

Other points raised by appellant are based upon issues in connection with which the evidence was in conflict, and the trial court resolved such conflicts in favor of respondents. It requires no citation of authority for the statement that when findings or a judgment are attacked as being unsupported by the evidence, the power of the appellate court in passing upon this question begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support such findings and judgment; and on appeal from a judgment for plaintiffs all conflicts in the evidence must be resolved in favor of such plaintiff, and all legitimate and reasonable inferences indulged in to uphold the judgment, if possible; and when two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial judge. (*Crawford* v. *Southern Pac. Co.*, 3 Cal. (2d) 427 [45 Pac. (2d) 183].) Upon the triers of fact rests the responsibility to reconcile, if possible, any apparent conflict, whether the same arises from the entire case or in the testimony of a single witness, and to effectuate all the evidence, when the nature of the case will admit of such a disposition; or, if the conflict is irreconcilable, to place their own value on the contradictory evidence. (*Darling* v. *Pacific Elec. Ry. Co.*, 197 Cal. 702, 708 [242 Pac. 703].) All intendments are in favor of the judgment arrived at upon conflicting testimony. Where the facts are such that contradictory inferences can reasonably be drawn from them, an appellate court will not substitute other in-

ferences for those adopted by the trial court. ' (*Hughes* v. *Quackenbush,* 1 Cal. App. (2d) 349, 354 [37 Pac. (2d) 99].) This is the rule even where the reviewing court might have reached a different conclusion.

For the foregoing reasons, the judgment appealed from is affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 17, 1937.