[Civ. No. 3556. Fourth Dist. Apr. 21, 1947.]

PETE PARETCHAN, Respondent, v. M. & S. FARMS (a Copartnership) et al., Appellants.

L. Kenneth Say for Appellants.

Ralph Moradian for Respondent.

GRIFFIN, J.—Plaintiff filed this action against defendants, alleging that in 1944 he performed certain services in connection with the purchase of grapes and tree fruits, as an agent and buyer of defendants.

Count one alleged an express contract for payment of a commission of $3.50 a ton for tree fruits and $2.00 per ton for grapes, totaling $4,857.50, and that $1,150 had been paid on said contract.

Count two alleged an open book account in the same amount.

Count three was for reasonable value of services performed for a claimed balance due.

In count four plaintiff asked for $400 for use and operation of his truck.

The trial court found as to the first count that no express contract was entered into as alleged; and as to count two, that there was no open book account. On count three it allowed $2,450 as the reasonable value of services performed, less a credit of $1,150 theretofore paid, and also allowed $200 on count four for the use of the truck.

Defendants appealed from the judgment, claiming that plaintiff is not entitled to recover for services performed and materials furnished because he failed to comply with the regulation of the Office of Price Administration requiring the filing of a statement of maximum prices and pricing methods; that an illegal contract resulted from the failure to file the statement and that plaintiff can recover neither contractually nor by quantum meruit, citing Maximum Price Regulation Number 165, issued by the Office of Price Administration under the authority of Emergency Price Control Act of 1942, as amended, and particularly sections 14, 15, 21, and 23-(16) thereof, and such cases as *Napa Valley E. Co.* v. *Calistoga E. Co.*, 38 Cal.App. 477 [176 P. 699]; *Citizens State Bank* v. *Gentry*, 20 Cal.App.2d 415 [67 P.2d 364], to the effect that when it appears that there is a violation of a statute designed for the protection of the public with a penalty prescribed for the violation thereof, such penalty is equivalent to express prohibition, and a contract made in violation of the terms

thereof is void, and that illegal contracts, contrary to public morals or public policy, are not enforceable.

Plaintiff concedes the law as stated but claims those cases are completely inapplicable and irrelevant insofar as the facts and findings in this case are concerned. Plaintiff contends that he, *as an employee,* was not required to file the O.P.A. statement referred to; that the trial court specifically found that no illegal contract had been made by the parties; that no provision in the O.P.A. statute taints as illegal a contract entered into without the filing of the statement; and even if, a void contract had been entered into, and particularly if it were not in violation of public policy, the law and good conscience would permit recovery for the reasonable value of work and labor actually performed.

Section 23-(16) of the regulation respecting the establishment of maximum prices for certain specified services defines the *services* covered by the regulation to mean "the performance of an act or series of acts rendered, *otherwise than as an employee,* in connection with the processing, distribution . . . or negotiation of purchase or sales of a commodity. . . ."

Plaintiff has contended throughout that he was an *employee* and came within the exception above noted. Defendants concede that an employee is excepted by the act but argue that the evidence and the findings of the court do not justify the conclusion that plaintiff was an employee.

The evidence shows, by defendant Schoenburg's testimony, that plaintiff was "employed" by him in 1943, for a short period of time; that "he went out and located some crops for us that I went out and bought myself"; that they made a lump sum agreement or settlement at the end of the season; that nothing was said about how much he was to receive for his services; that he bought for the M. & S. Farms in 1944, and that he told plaintiff that he wanted "him to work with me that year as he had done the previous year"; that nothing was said about pay for his services and that it was his job to go and find the fruit, make an estimate of the tonnage, report back to him, and he would then go back with plaintiff and look over the crop himself and pay the farmer a lump sum for it; that plaintiff advised as to when to pick certain grapes. He then testified that he kept some books of account of the purchases in 1944, but they were "in an awful mess" and he could not make any determination as to the tonnage purchased or the monies earned by plaintiff; that nothing was said at the close of the season as to the amount of money that

was to be paid plaintiff; that he had been drawing money along as he needed it and that in August they discovered he was drawing too much so they wanted to put him on a $50 a week basis; that he was on the regular payroll to that extent. He then testified that they called plaintiff into the office at a later date (August 19), and discharged him.

Plaintiff testified that he was a licensed fruit buyer and bought grapes for Schoenburg in 1943; that he was paid $2.00 per ton for his services; that in 1944, he had a conversation with Schoenburg and he wanted to know if plaintiff would work for him again; that he told Schoenburg that he "wouldn't work for no salary but on a ton basis" i. e., $2.00 for grapes and $3.50 for tree fruit, and that he would "follow the fruit up, and see everything is brought to the packing house, take care of the orchard and so forth"; that he agreed, and subsequently they secured a packing house, boxes, labels, etc., and that he was to buy the fruit for shipment and supply the packing house, to superintend the harvesting and when it was ready to pick, it was his duty to help obtain labor "and that sort of thing"; that the only pay he received was what he drew on account; that he demanded his money at the end of the season according to tonnage but that defendants claimed they had to wait until they had the books straightened out; that he left the company because it would not settle with him; that he worked over 18 hours some days and furnished his truck for six months in hauling pickers back and forth and that he received no money for it.

A bill of particulars was filed by plaintiff showing purchases made by him and their estimated tonnage.

This is a résumé of the evidence bearing on the question of the nature of plaintiff's employment. The facts stated sufficiently support the implied finding that plaintiff was but an *employee*, within the meaning of that term. The court did find that there was no illegal contract entered into between the parties and specifically found as untrue the allegations in defendants' amendment to their answer, alleging illegality by reason of the O.P.A. regulation.

In view of this determination, the merits of the other reasons set forth why the judgment should be affirmed will not be considered.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.