Filed 3/20/24  Liberty Law Office v. The Bloom Firm CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| LIBERTY LAW OFFICE, INC.,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>THE BLOOM FIRM,<br><br>  Defendant and Respondent. | A165269<br>A166497<br><br>(Alameda County Sup. Ct.<br>No. HG20079536)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

It is ordered that the opinion filed herein on February 26, 2024 be modified as follows:

1. "CPRC" shall be corrected to read "CRPC" throughout the opinion as follows:
    a. On page 5, lines 5, 9, and 14;
    b. On page 10, Section B, line 4;
    c. On page 12, first full paragraph, line 12;
    d. On page 19, lines 7, 13, and 17;
    e. On page 22, first full paragraph, line 9.

2. "Micha Starr" shall be corrected to read "Micha Star Liberty" on page 21, first full paragraph, line 9.

3. Lastly, on page 22, we add new footnote 6 at the end of the sentence in line 2 from the top of the page (ending "in its entirety") to read as follows:

> In a petition for rehearing, Liberty Law complains that our opinion only mentions CRPC rule 5.4 once in determining that the fee sharing agreement between Liberty Law and Bloom should not be voided on public policy grounds. Liberty Law suggests that if we "truly believe" that the Agreement did not violate rule 5.4 because of Bloom's lack of registration with the State Bar "then the opinion needs to actually ***say that***." We thought we had made ourselves clear. The question with which we have grappled in this lengthy opinion is *not* whether the rule was violated. The question is whether the Agreement should be voided on that basis. On these facts, our answer is no.
>
> The petition for rehearing is denied.

Dated:

_____
Humes, P. J.

A165269N, A166497N

Filed 2/26/24  Liberty Law Office v. The Bloom Firm CA1/1 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LIBERTY LAW OFFICE, INC.,<br>    Plaintiff and Appellant,<br>v.<br>THE BLOOM FIRM,<br>    Defendant and Respondent. | A165269<br>A166497<br><br>(Alameda County Sup. Ct.<br>No. HG20079536) |

In this dispute over legal fees, Liberty Law Office, Inc. (Liberty) appeals from the trial court's confirmation of an arbitration award in favor of The Bloom Firm (Bloom).  Liberty argues that the arbitrators exceeded their powers within the meaning of Code of Civil Procedure[1] section 1286.2, subdivision (a)(4) by enforcing an illegal contract.  Specifically, citing *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing* (2018) 6 Cal.5th 59 (*Sheppard, Mullin*), Liberty contends its agreement with Bloom is void and unenforceable as against public policy because Bloom failed to register as a professional law corporation as required by various statutes, the California Rules of Professional Conduct (CRPC), and the Rules of the State

---

[1]  All statutory references are to the Code of Civil Procedure unless otherwise specified.

1

Bar of California (State Bar Rules). A panel of three arbitrators has thoroughly considered and rejected this claim, as has the trial court in its written decision confirming the arbitration award. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Joint Venture Agreement & Arbitration Request*

On August 23, 2019, Lisa Bloom for The Bloom Firm and Micha Star Liberty for Liberty Law Office entered into an agreement entitled Joint Venture Agreement Between the Bloom Law Firm and Liberty Law Office (JVA or Agreement). The JVA provided that the two organizations would be known as members of Bloom with Micha Liberty and her office having "of counsel" status. Thus, the JVA provided that Liberty and Bloom would "collectively and collaboratively prosecute legal matters." To that end, Liberty agreed to contribute to the joint venture "currently filed or retained personal injury and employment rights cases which Liberty had filed on a contingency basis" as listed on an attached schedule, and Bloom agreed to provide all aspects of business management and to fund all litigation matters subject to the joint venture. Any fees earned on these existing cases contributed by Liberty were to be split 50/50 between Liberty and Bloom. The JVA contained additional provisions for the payment of costs and the fee splitting with respect to any new cases retained for the joint venture.

The Agreement included provisions for the winding up of the joint venture under specified circumstances, including the "[e]xpress will of either Party" or the death or disability "of a Party." And it contained an arbitration clause requiring that—after a good faith attempt to settle "any controversy relating to the Agreement"—the parties would submit the matter to binding arbitration. Finally, a stated purpose of the Agreement was "for the Parties to engage in the practice of law in the State of California (or elsewhere) in

2

accordance with the California Business and Professions Code and all rules of practice and other regulations adopted by any courts and administrative bodies before which the Parties or the associates of either Party shall be admitted to practice." The parties agreed not to "engage in any conduct that would contradict or compete with the purpose of the Joint Venture."[2]

In March 2020, Bloom indicated its intention to terminate the JVA. On June 3, 2020, Bloom filed an arbitration demand pursuant to the arbitration provision of the JVA. Bloom alleged that Liberty had failed to comply with the fee-splitting terms of the Agreement after dissolution.

## B.    *Court Challenge*

On November 9, 2020, Liberty filed a complaint for declaratory relief in this action, seeking resolution of the following issues: (1) whether the JVA was a valid and enforceable fee sharing agreement; and (2) whether Bloom was entitled to relief in quantum meruit when the attorney fee-sharing provision in the JVA is unenforceable. Specifically, citing *Sheppard, Mullin, supra*, 6 Cal.5th 59, Liberty alleged that "[w]here attorneys fail to comply with the requirements of [CRPC rule] 1.5.1 and do not obtain written, informed consent from the client, any fee sharing agreement between them is rendered unenforceable as a matter of public policy." Liberty also asked for an order staying any arbitration proceedings pending resolution of the court action.

---

[2] As these provisions make clear, although the Agreement was executed by the Liberty and Bloom firms, it uses the term "Party" more broadly to refer as well to individual attorneys Micha Liberty and Lisa Bloom. Indeed, the joint venture was at bottom a marriage between two sophisticated and well-known licensed attorneys, and it is doubtful it would have continued absent the participation of both lawyers.

On November 25, 2020, the arbitration panel denied Liberty's request to delay the arbitration proceedings, confirming that it had jurisdiction over the claims relating to the JVA, notwithstanding Liberty's attack on the validity of the fee sharing provision in the Agreement. Liberty, however, refused to withdraw its lawsuit. On December 15, 2020, Bloom filed a motion to compel arbitration and stay proceedings in the declaratory action. On January 20, 2021, Liberty filed a statement of non-opposition to Bloom's motion to compel, agreeing to arbitrate but asking the trial court to retain jurisdiction of the matter pending conclusion of the arbitration proceedings.[3] The trial court granted the motion to compel arbitration and stayed the trial court proceedings on February 3, 2021.

## C.     *Decision of the Arbitrators*

After evidentiary hearings on seven dates in May 2021 and post-hearing written submissions and oral presentations from the parties, the panel of three arbitrators issued its decision on August 25, 2021. Bloom's arbitration demand alleged breach of contract, breach of the implied covenant of good faith and fair dealing, and quantum meruit. Liberty asserted numerous counter claims/affirmative defenses, including fraud, illegality, unenforceability due to violations of the CRPC, and serious legal and ethical violations precluding quantum meruit. The arbitration panel preliminarily found that the parties attempted in good faith to settle their dispute before resorting to arbitration as required by the Agreement.

On the merits, the panel determined that there was no evidence any clients were harmed by formation or dissolution of the JVA or by Bloom's

---

[3] Liberty asserts that this statement of non-opposition does not waive her right to contest the enforceability of the JVA because she did not know at that time that Bloom was not registered as a law corporation with the State Bar. We will assume without deciding that this is correct.

4

alleged breaches of the CRPC. While the evidence showed that at all times during the joint venture Bloom had failed to register as a professional law corporation with the State Bar, the panel concluded that this was a matter for the State Bar, not a defense to Bloom's claims. In so finding, the panel rejected Liberty's general suggestion that "any and all violations of the CPRC and the [State Bar Rules] implicate the public policy of the State of California," rendering any contract entered into by an offending attorney or law firm void and unenforceable as against public policy. And it denied Liberty's specific argument that failure to register as required by the CPRC and State Bar Rules implicated public policy such that the JVA should be deemed unenforceable. Moreover, since Liberty conceded during the arbitration that the client consents obtained by Bloom under the JVA were valid except to the extent they were entered into with a firm not authorized to practice law, its defense under CPRC Rule 1.5.1 with respect to client consents "[fell] with the law corporation registration defense." The panel went on to reject the remainder of Liberty's affirmative defenses.[4]

Having concluded that Liberty was in breach of a valid and enforceable JVA, the panel next turned to the issue of damages. It found that client consents to the fee-splitting arrangement in the JVA had only been signed by eight clients. Accordingly, the arbitrators awarded Bloom contract damages under the fee-splitting provision of the JVA (50 percent) for those eight clients (three whose cases had been resolved and five whose matters were

---

[4] The panel found much of the evidence presented by the parties—including the involvement of Lisa Bloom's husband (a non-lawyer) with Bloom, Lisa Bloom's prior representation of Harvey Weinstein, Micha Liberty's management style, Lisa Bloom's trial experience, and the financial resources and professional experience of Bloom and its staff—irrelevant to the resolution of the issues presented. We concur.

5

still pending). Damages in quantum meruit were awarded for ten other cases (five resolved and five unresolved). Liberty was entitled to a setoff for unpaid management expenses and case costs for which Bloom was responsible. However, administrative fees and expenses for the arbitration which had previously been advanced by Bloom were required to be reimbursed by Liberty. On October 13, 2021, the panel modified its decision to correct several calculation errors.

## D. *Confirmation by the Trial Court*

On October 25, 2021, Bloom filed a petition in the trial court to confirm the arbitration award. Liberty responded by filing a motion to vacate the award in November 2021. On January 28, 2022, the trial court issued its written decision, granting Bloom's request to confirm the arbitration award and concomitantly denying Liberty's motion to vacate. Specifically—noting that *Sheppard, Mullin* has facts bearing "little resemblance" to those in the instant case—the trial court rejected Liberty's argument that the arbitration award must be vacated because the JVA was executed in violation of public policy as expressed in CRPC rules 1.5.1 and 5.4. Asserting that not every violation of every rule of professional conduct would render a fee-sharing agreement unenforceable as against public policy and that the cases relied upon by Liberty involved rules designed for the protection of the public, the trial court opined that Bloom's failure to register as a law corporation did not render it incapable of validly executing the JVA (CRPC rule 5.4). Nor did its unregistered status impact the ability of clients to execute valid consents to the fee splitting (CPRC rule 1.5.1).

Judgment was issued on March 23, 2022, awarding Bloom $738,395.80 in contract and quantum meruit damages for five resolved cases, $160,020.00 in arbitration fees and expenses, and pre-judgment interest. In addition, the

6

judgment provided for a 50 percent fee share upon receipt of attorney's fees in five unresolved cases, and quantum meruit awards ranging from $332,300.00 to $253.50 upon receipt of fees with respect to five other pending cases. Liberty timely appealed. On September 13, 2022, the trial court issued an amended judgment nunc pro tunc correcting a clerical error. Liberty also appealed from the amended judgment. On April 5, 2023, we consolidated the two matters for briefing, oral argument, and decision.[5]

## II.  DISCUSSION

### A.    *Legal Frameworks and Standards of Review*

#### 1.    *Rules of Arbitral Finality*

"California law favors alternative dispute resolution as a viable means of resolving legal conflicts. 'Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration.' " (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916 (*Richey*).) Accordingly, "[i]n considering an appeal from a judgment confirming an arbitration award, we may not ' "review the merits of the dispute, the sufficiency of the evidence, or the arbitrator's reasoning, nor may we correct or review an award because of an arbitrator's legal or factual error, even if it appears on the award's face." ' " (*State Farm Mutual Automobile Ins. Co. v. Robinson* (2022)

---

[5] On August 22, 2023, we granted the application for leave to file an amicus curiae brief in this matter to several clients whose cases fell within the ambit of the JVA. While we question their characterization of themselves as "primary stakeholders" in this dispute, we have reviewed the briefing as well as the response filed by Liberty and conclude they add nothing to our determination of the issues before us.

76 Cal.App.5th 276, 282.) Indeed, "[a]rbitrators, unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10–11 (*Moncharsh*).)

Section 1286.2 "provide[s] limited grounds for judicial review of an arbitration award." (*Richey, supra,* 60 Cal.4th at p. 916.) Among these grounds is that "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (§ 1286.2, subd. (a)(4).) This "excess-of-authority exception applies, and an arbitral award must be vacated, when a court determines that the arbitration has been undertaken to enforce a contract that is 'illegal and against the public policy of the state.' " (*Sheppard, Mullin, supra*, 6 Cal.5th at p. 73.)

Where, as here, a party claims that an award exceeded an arbitrator's powers because "the entire [underlying] contract or transaction was illegal," the issue of illegality is for the trial court to decide, and it owes no deference to the arbitrator's resolution of that issue. (*Moncharsh, supra*, 3 Cal.4th at pp. 31–32; *Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 892.) In turn, " ' " 'we review the trial court's order (not the arbitration award) under a de novo standard.' " ' " (*Roussos v. Roussos* (2021) 60 Cal.App.5th 962, 973; see *Kahn v. Chetcuti* (2002) 101 Cal.App.4th 61, 65 [whether arbitrator exceeded authority is legal issue independently reviewed on appeal].)

### 2. *Relevant Statutes & Rules Governing Attorney Conduct*

Pursuant to section 6160 of the Business and Professions Code: "A law corporation is a corporation which is registered with the State Bar of

California and has a currently effective certificate of registration from the State Bar pursuant to the Professional Corporation Act, as contained in Part 4 (commencing with Section 13400) of Division 3 of Title 1 of the Corporations Code, and this article.  Subject to all applicable statutes, rules and regulations, such law corporation is entitled to practice law.  With respect to a law corporation the governmental agency referred to in the Professional Corporation Act is the State Bar."  (See also Corp. Code, § 13404 [with exceptions not relevant here "no professional corporation shall render professional services in this state without a currently effective certificate of registration issued by the governmental agency regulating the profession in which such corporation is or proposes to be engaged"]; State Bar Rules, rule 3.150(A) ["To practice law in California, a corporation must be certified by the California Secretary of State and registered by the State Bar.  These rules refer to such a corporation as a law corporation."].)

The CRPC was adopted by the Board of Trustees of the State Bar and approved by our Supreme Court with the intent "to regulate professional conduct of lawyers through discipline."  (CRPC, rule 1.0(a).)  They were promulgated pursuant to Business and Professions Code sections 6076 and 6077 "to protect the public, the courts, and the legal profession; protect the integrity of the legal system; and promote the administration of justice and confidence in the legal profession."  (CRPC, rule 1.0(a).)  A "willful violation" of any of the rules "is a basis for discipline."  (*Id.*, rule 1.0(b)(1).)

Rule 5.4 of the CRPC, titled "Financial and Similar Arrangements with Nonlawyers" provides in relevant part that "[a] lawyer or law firm shall not share legal fees directly or indirectly with a nonlawyer or with an organization that is not authorized to practice law."  And, according to CRPC rule 1.5.1(a): "Lawyers who are not in the same law firm shall not divide a fee

9

for legal services unless: (1) the lawyers enter into a written agreement to divide the fee; (2) the client has consented in writing, either at the time the lawyers enter into the agreement to divide the fee or as soon thereafter as reasonably practicable, after a full written disclosure to the client of: (i) the fact that a division of fees will be made; (ii) the identity of the lawyers or law firms that are parties to the division; and (iii) the terms of the division; and (3) the total fee charged by all lawyers is not increased solely by reason of the agreement to divide fees."

### 3. Validity of Contracts

Under Civil Code section 1667, a contract is illegal if it is "[c]ontrary to an express provision of law" or "[c]ontrary to the policy of express law, though not expressly prohibited." Although " 'questions of public policy are primarily for the legislative department to determine,' . . . a contract or transaction *may* be found contrary to public policy even if the Legislature has not yet spoken to the issue." (*Sheppard, Mullin, supra*, 6 Cal.5th at p. 73, italics added.) An administrative regulation *may* establish a public policy with which a contract must comply to be lawful. (*Ibid*., italics added.)

## B. The JVA Is Not Void on Public Policy Grounds

On appeal, Liberty renews the argument it made before both the arbitration panel and in the trial court that the JVA is void and unenforceable as against public policy because Bloom failed to register as a professional law corporation as required by various statutes, the CPRC, and the State Bar Rules. Liberty additionally contends, for the first time on appeal, that the executed client consents in this matter were inadequate and thus the fee-sharing provision is invalid. We conclude that the JVA as a whole was not rendered unenforceable due to Bloom's registration error. We thus do not reach Liberty's other claims, as they were decided pursuant to a

10

valid arbitration provision in an enforceable agreement and are thus immune from judicial review.

### 1. *Relevant Precedent*

In *Loving & Evans v. Blick* (1949) 33 Cal.2d 603 (*Loving*), the Supreme Court considered the propriety of a judgment entered upon an arbitration award in compensation to certain contractors for work performed and services rendered under a building contract. (*Id.* at p. 604.) One of the two contractors (Evans) as well as the partnership (Loving and Evans), however, had failed to comply with state licensing requirements. The Court concluded that the award could not "be reconciled with the settled public policy of this state as expressed in our statutory law." (*Id.* at pp. 604-605.) In particular, the Court reaffirmed that " 'a contract made contrary to the terms of *a law designed for the protection of the public* and prescribing a penalty for the violation thereof is illegal and void, and no action may be brought to enforce such contract.' " (*Id.* at p. 607, italics added.) While the court proceedings involved confirmation of an arbitrator's award, "the rules which give finality to the arbitrator's determination of ordinary questions of fact or of law are inapplicable where the issue of illegality of the entire transaction is raised in a proceeding for the enforcement of the arbitrator's award." (*Id.* at p. 609.)

In voiding the contract (and thus the corresponding arbitration award), the Court expressly distinguished two other cases. In *Gatti v. Highland Park Builders, Inc.* (1946) 27 Cal.2d 687, "a judgment in favor of plaintiff contractors was affirmed although no license in the name of the partnership under which they had been operating had been issued to the two plaintiff contractors as such." (*Loving, supra*, 33 Cal.2d at p. 608.) However, both partners possessed individual contractor's licenses, and, during the performance of the contract, a joint contractor's license was issued to the two

11

partners and a third party.  Under such circumstances, the Court concluded that " 'the legislative scheme in relation to the licensing of contractors, intended "for the safety and protection of the public," would become an unwarranted shield for the avoidance of a just obligation.' " (*Ibid.*; see also *Citizen's State Bank v. Gentry* (1937) 20 Cal.App.2d 415, 418–420.)

Subsequently, in *Moncharsh*, *supra*, 3 Cal.4th 1, an attorney (Moncharsh) entered into an employment contract with a law firm (Blase) which included a fee sharing provision pursuant to which, if Moncharsh left the firm, Blase would receive 80 percent of any fees generated by clients that left with him.  (*Id.* at p. 6.)  Moncharsh subsequently terminated his relationship with Blase, taking six clients with him (five of whom he had brought to the firm with him and one that had been recently acquired while he was still employed by Blase).  (*Ibid.*)  After Moncharsh refused to share fees with respect to these clients, the matter was submitted to arbitration during which Moncharsh argued that the fee sharing provision of the employment agreement was unenforceable because it violated public policy and various provisions of the CPRC.  (*Id.* at pp. 6–7.)  The arbitrator disagreed, noting that, at the time Moncharsh agreed to the employment contract, he "was a mature, experienced attorney, with employable skills" who could have negotiated something different if he did not agree with the 80/20 split." (*Id.* at p. 7.)  The arbitrator upheld the fee-sharing provision except as it related to the recently acquired client because, with respect to that client, the split would be unconscionable.  (*Id.* at pp. 7–8.)

After the trial court confirmed the arbitrator's award, the Supreme Court considered whether the award was reviewable.  (*Moncharsh*, *supra*, 3 Cal.4th at p. 8.)  The Court held that judicial review of private arbitration awards is limited "to those cases in which there exists a statutory ground to

12

vacate or correct the award." (*Id.* at p. 28.) And it rejected the notion that arbitrators "exceed[] their powers" within the meaning of section 1282.6 merely by reaching an erroneous decision. (*Moncharsh*, at p. 28.) The Court then considered Moncharsh's contention that judicial review of an arbitration award is available "when one party alleges the underlying contract, a portion thereof, or the resulting award, is illegal or in violation of public policy." (*Id.* at p. 29.) It concluded that a party may avoid arbitration altogether "if an otherwise enforceable arbitration agreement is contained in an illegal contract." (*Ibid.*) However, when "the alleged illegality goes to only a portion of the contract (that does not include the arbitration agreement), the entire controversy, including the issue of illegality, remains arbitrable." (*Id.* at 30.)

Moncharsh was only challenging the fee-splitting provision of the employment agreement. Nevertheless, relying on *Loving*, he argued judicial review was appropriate because the provision was " 'illegal' " and violative of " 'public policy' " as reflected in several provisions of the CRPC. (*Moncharsh*, *supra*, 3 Cal.4th at p. 31.) The Court distinguished *Loving* as involving the alleged illegality of the entire agreement. While it acknowledged that judicial review of an arbitrator's decision on the facts presented might be available in exceptional circumstances, given the Legislature's strong support for the finality of arbitral awards, the Court concluded such awards should be immune from judicial scrutiny "[a]bsent a clear expression of illegality or public policy." (*Moncharsh*, at p. 32.) The Supreme Court perceived "nothing in the Rules of Professional Conduct at issue in this case that suggests resolution by an arbitrator *of what is essentially an ordinary fee dispute would be inappropriate or would improperly protect the public interest*." (*Id.*, at p. 33, italics added.) Accordingly, judicial review of the arbitrator's decision was unavailable.

13

In *Chambers v. Kay* (2002) 29 Cal.4th 152 (*Chambers*), the Supreme Court refused to uphold a fee-sharing agreement between two attorneys who were not partners or associates of each other, or shareholders in the same law firm where no written client consent had been obtained pursuant to former CRPC rule 2-200. (*Chambers*, at p. 148.) Under such circumstances, the Court opined that if it upheld the fee-sharing agreement "with no indication that the required client consent was either sought or given, [it] would, in effect, be both countenancing and contributing to a violation of a rule we formally approved in order 'to protect the public and to promote respect and confidence in the legal profession.' " (*Id.* at p. 158, citing CRPC, former rule 1-100(A) and Bus. & Prof. Code, § 6076; compare *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 440-441 [construction contract was enforceable where the contractor was unlicensed when it executed the contract but licensed by the time it performed the work; noting that the law regulating contractors (CSLL) had its own enforcement scheme and concluding under the circumstances of the case that, "[n]o compelling reason exist[ed] to conclude that the public protective purposes of the CSLL can only be served by deeming such contracts illegal, void, and unenforceable" based on lack of licensure alone].)

Two appellate cases from 2003 and 2007 are also instructive. *Olson v. Cohen* (2003) 106 Cal.App.4th 1209 (*Olson*) involved a client class action under the unfair competition laws seeking disgorgement of legal fees from a lawyer (Cohen) and his professional corporation for the years the corporation was not registered to practice law with the State Bar. (*Id.* at pp. 1211–1212.) On appeal, the court rejected the argument that, during the period before the corporation was registered, all services rendered by it were illegal and thus the related fee agreements were void. (*Id.* at p. 1214.) It noted that the

14

decision to incorporate as a professional corporation "is typically made to obtain tax advantages and to avoid personal liability for the corporation's debts" and thus is "not undertaken for the protection of clients. The protections for clients mandated by laws governing incorporation of law corporations, such as restrictions on who may be a shareholder and requirements for security for claims against the corporation, protect against abuses which might otherwise occur from the use of the corporate structure. Failure to comply with these requirements may result in an order to cease and desist or suspension or revocation of registration. (Bus. & Prof. Code, §§ 6168, 6169.)." (*Olson*, at pp. 1214–1215.) In that case—where Cohen himself was licensed, there was no allegation of malpractice, the failure to register was subject to other regulatory penalties, and no evidence was presented that the clients were harmed by the oversight—requiring "disgorgement of fees because of a failure to register the corporation . . . [was deemed] disproportionate to the wrong." (*Id.* at pp. 1214–1215.) Put another way, the object of the fee agreements was the provision of legal services by Cohen, a licensed attorney, not violation of the law. (*Id.* at p. 1215; accord, *Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813 (*Garber*) [relying on *Olson*, which "took into consideration broad questions of policy" in determining that "the failure to register as a professional corporation should not have, and does not have, an impact on attorney fees"].)

Most recently, in *Frye v. Tenderloin Housing, Inc.* (2006) 38 Cal.4th 23, the housing clinic—a nonprofit public benefit corporation—provided legal services through licensed attorney-employees for low and moderate income tenants. After the clinic retained a portion of a damages award received in successful litigation pursuant to a contingency fee agreement, one of the represented tenants (Frye) argued that the clinic was not entitled to retain

15

the fees because it had failed to register with the State Bar as a law corporation. (*Id.* at pp. 29–31.) Although acknowledging a public purpose of the registration requirement was to protect clients against a profit motive (*id.* at p. 38), the Supreme Court disagreed with Frye, concluding that—even if the nonprofit was engaged in the unauthorized practice of law and should have registered and complied with the Business and Professions Code—that failure did not justify disgorgement of statutory attorney fees from the nonprofit to Frye where Frye was not injured by the nonprofit's compliance failures. (*Id.* at pp. 47–49.) Specifically, since "[u]nder no imaginable circumstance would Frye have fared better had [the clinic] registered with the State Bar," the Court opined that " '[t]o require disgorgement of fees because of a failure to register the corporation . . . is disproportionate to the wrong.' " (*Id.* at p. 48, quoting *Olson*.)

It is against this backdrop that the Supreme Court decided *Sheppard, Mullin, supra*, 6 Cal.5th 59, in 2018. There, a large law firm agreed to represent J-M Manufacturing Company, Inc. (J-M), as the defendant in certain litigation brought by a number of public entities; at the same time, different attorneys within the law firm were representing one of the public-entity plaintiffs in the J-M litigation, South Tahoe Public Utility District (South Tahoe), in an unrelated matter. (*Id.* at pp. 67–69.) Both clients signed engagement agreements containing purported general waivers of current and future conflicts of interest. (*Id.* at pp. 68–69.) Based on these waivers, the law firm concluded it did not need to disclose to either client that it was also representing the other. (*Id.* at pp. 69–70.) However, after discovering the simultaneous representation, South Tahoe successfully moved to disqualify the law firm from its representation of J-M in the litigation between J-M and South Tahoe. The law firm then sued J-M for its

16

unpaid fees and the matter was sent to arbitration over the objection of J-M, which maintained that the entire agreement was unenforceable given the conflict of interest. (*Id.* at pp. 70–71.)

The arbitrators found in Sheppard, Mullin's favor, concluding that— even assuming Sheppard, Mullin's failure to disclose the conflict constituted an ethical violation—the violation was not sufficiently egregious to warrant forfeiture or disgorgement because there was no showing that the dual representation had damaged J-M. (*Sheppard, Mullin, supra*, 6 Cal.5th at p. 71.) After Sheppard, Mullin petitioned to confirm the award, J-M moved to vacate, contending the attorney engagement agreement was unenforceable because it violated former CRPC rule 3-310(C)(3), which prohibited an attorney, without the informed written consent of each client, from " '[r]epresent[ing] a client in a matter and at the same time in a separate matter accept[ing] as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.' " (*Shepard, Mullin*, at p. 80.) Citing *Moncharsh* for the proposition that a violation of the CRPC does not render a retainer agreement unenforceable, the superior court confirmed the award. (*Sheppard, Mullin*, at p. 71.) The appellate court then reversed, finding a violation of the CRPC despite the broad conflict waivers in place and concluding that this rendered the engagement agreement unenforceable and disentitled Sheppard Mullin from any fees for representing J-M. (*Sheppard, Mullin*, at pp. 71–72.)

On petition for review, the Supreme Court first reaffirmed the holding in *Loving* that "an arbitral award must be vacated, when a court determines that the arbitration has been undertaken to enforce a contract that is 'illegal *and against the public policy of the state*.' " (*Sheppard, Mullin, supra*, 6 Cal.5th at p. 73, italics added.) The Court rejected the argument that a

17

contract can only be found unenforceable in violation of public policy when the policy at issue had been declared by the Legislature. (*Ibid,*, quoting Civ. Code, § 1667.) Rather, citing *Chambers*, the Court observed that "California courts have held that a contract or transaction involving attorneys *may be* declared unenforceable for violation of the Rules of Professional Conduct, the set of binding rules governing the ethical practice of law in the State of California." (*Id.* at p. 73, italics added.) The Court thus confirmed that "California law holds that a contract *may* be held invalid and unenforceable *on public policy grounds* even though the public policy is not enshrined in a legislative enactment. (*Id.* at p. 79.)

Turning to the merits of the case before it, the Supreme Court opined that the "limitations in rule 3-310(C)(3) serve to enforce 'the attorney's duty— and the client's legitimate expectation—of loyalty." (*Sheppard, Mullin, supra*, 6 Cal.5th at p. 84.) "It is for this reason that the rules encompass simultaneous representation even in unrelated matters where there is no risk that confidential information will be transmitted." (*Ibid.*) Because the "transaction was entered under terms that undermined an ethical rule designed for the protection of the client as well as for the preservation of public confidence in the legal profession," the Court found the contract as a whole unenforceable. (*Id.* at p. 87.) Under the circumstances, the Supreme Court remanded the matter for a determination of whether the law firm should recover in quantum meruit for the reasonable value of the legal services it provided to J-M. (*Id.* at pp. 88-89.)

### 2. The JVA is not Unenforceable As Against Public Policy

Having reviewed the case law in this area at some length, we have discerned several general principles which we conclude determine the resolution of this matter. First, " 'the Legislature has expressed a "strong

18

public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." ' " (*Sheppard, Mullin, supra*, 6 Cal.5th at p. 72, quoting *Moncharsh*.) Nevertheless, a contract (which includes an otherwise valid arbitration provision) may be deemed void and unenforceable in its entirety by the courts if it violates a law, rule, or regulation designed for the protection of the public. Thus, a number of cases have found contracts unenforceable where they have violated specific CPRC rules designed for public protection. (See, e.g, *Sheppard, Mullin*, at p. 87 [since CRPC conflict rules are "designed for the protection of the client as well as for the preservation of public confidence in the legal profession," contract unenforceable where firm failed to disclose a known current conflict]; *Chambers*, *supra*, 29 Cal.4th at pp. 156–157 [refusing to enforce fee-sharing agreement where no client consent was obtained in violation of CPRC because clients are entitled to the protection of knowing how any fees will be split]; *Hance v. Super Store Industries* (2020) 44 Cal.App.5th 676, 684, 689 [failure of attorney to disclose lack of professional liability insurance to clients pursuant to CPRC rule 3-410 rendered consents obtained under fee-splitting agreement unenforceable; noting "[t]he disclosure would enable the client to make an informed decision whether to engage an attorney who did not carry insurance that would protect the client in the event of the attorney's negligent or other wrongful conduct that might have an adverse effect on the client's case"].)

Licensing statutes and regulations, however, have been treated somewhat differently. While licensing schemes obviously serve to protect the public from "incompetence and dishonesty" (*MW Erectors, supra,* 36 Cal.4th at p. 436), not all contracts entered into by unlicensed entities are automatically void (see *id.* at p. 440). For instance, while *Loving* found

19

unenforceable an agreement where only one of two partners was a licensed contractor and the partnership was also unlicensed, it expressly distinguished cases where (1) a partnership was unlicensed but both individual partners were licensed; and (2) a contractor's license expired during performance of the contract but was renewed in the name of a corporation bearing the contractor's name and work was completed by the corporation. (*Loving, supra,* 33 Cal.2d at p. 608; see also *Brawerman v. Loeb & Loeb, LLP* (2022) 81 Cal.App.5th 1106, 1120 [the unlicensed practice of law by a firm attorney does not completely invalidate retainer agreement pursuant to which firm attorneys also engaged in the licensed practice of law].) This makes sense because, where the safety and protection of the public was otherwise protected, strict adherence to the licensing regime " 'would become an unwarranted shield for the avoidance of a just obligation.' " (*Loving,* at p. 608.) Thus, in these situations, the courts look to facts like the sophistication of the parties, the licensing of the individuals performing the actual work, whether the client was injured by the compliance failure, and whether the law provides for other penalties for noncompliance short of voiding the entire agreement.

Turning to the merits of this case, we note, as stated above, that the State Bar Rules were not promulgated *just* to protect clients, but also to protect the courts, the legal profession, and the integrity of the legal system. (CRPC, rule 1.0(a).) And two appellate courts have expressly concluded that the failure to register a law corporation with the State Bar does not automatically vitiate a fee agreement because the purpose of the requirement is not to protect the public but is a decision "typically made to obtain tax advantages and to avoid personal liability for the corporation's debts." (*Olson, supra,* 106 Cal.App.4th at pp. 1214–1215.) Further, to the extent

20

incorporation implicates other concerns involving misuse of the corporate structure, such issues may be addressed through administrative penalties. (*Id.* at p. 1215.) In addition, the Supreme Court in *Moncharsh* saw nothing in the CRPC rules at issue in that case suggesting to it that "resolution by an arbitrator *of what is essentially an ordinary fee dispute would be inappropriate or would improperly protect the public interest*." (*Moncharsh, supra*, 3 Cal.4th at p. 33, italics added.) Similarly, we see nothing in the current "ordinary fee dispute" that would mandate holding the JVA unenforceable in its entirety.

This case does not involve safeguarding a client against a corporate profit motive as discussed in *Frye*. Here, the arbitrator simply divided fees in the eight cases for which client consents existed and distributed the remainder of the fees under the JVA pursuant to principles of quantum meruit. Moreover, the JVA was executed by two sophisticated attorneys on behalf of their respective law corporations with little difference in bargaining power. One firm's consideration was largely to fund and administer operations of the other. And, as mentioned above, the Agreement presupposed the involvement of the two lead attorneys, Micha Starr and Lisa Bloom. Had Liberty wanted a different agreement, it could simply have negotiated it. Further, there is no allegation that Bloom or any of the other attorneys actually providing legal services under the JVA were not properly licensed to practice law. Nor does Liberty suggest that the parties were aware of the compliance issue when they executed the JVA. In addition, there is no evidence any of the clients were harmed by Bloom's lack of State Bar registration. And, as the parties agree, the object of the agreement was to "collectively and collaboratively prosecute legal matters", not to violate the CRPC. Finally, as the arbitrators noted, Bloom is subject to other discipline

21

for failing to register as required. Under these circumstances, we cannot conclude that the JVA was void and unenforceable in its entirety.

Having made this determination, Liberty's other contentions necessarily fail. We have assumed without deciding that Liberty did not waive the right to challenge the illegality of the JVA as a whole by submitting to arbitration and then raising the issue before the arbitrator as soon as Liberty became aware of it. However, the same cannot be said of its claims with respect to the inadequacy of the consents obtained in this case. Rather, as mentioned above, Liberty conceded before the arbitrator that its only challenge to the consents was that they were illegal based on Bloom's failure to register as a law corporation and thus its defense under CPRC Rule 1.5.1 with respect to client consents "[fell] with the law corporation registration defense." Under such circumstances, we have no authority to revisit the arbitration panel's conclusions with respect to the legality of the consents that were obtained in this case. (*Moncharsh*, *supra*, 3 Cal.4th at p. 12 ["[I]t is within the power of the arbitrator to make a mistake either legally or factually. When parties opt for the forum of arbitration they agree to be bound by the decision of that forum knowing that arbitrators, like judges, are fallible."]; *Marsch v. Williams* (1994) 23 Cal.App.4th 238, 243–244 [citing *Moncharsh* in concluding that unless one of the enumerated statutory grounds exists, "a court may not vacate an award even if it contains a legal or factual error on its face which results in substantial injustice].) Nor would we at this late hour. (*Law Finance Group, LLC v. Key* (2023) 14 Cal.5th 932, 958 [citing *Moncharsh* for conclusion that "challenges going 'to only a portion of the contract' can be forfeited if they are not timely raised"]; *Moncharsh* at p. 30 ["[W]e cannot permit a party to sit on [its] rights, content in the knowledge that should [it] suffer an adverse decision, [it] could then raise the

22

illegality issue in a motion to vacate the arbitrator's award. A contrary rule would condone a level of 'procedural gamesmanship' that we have condemned as 'undermining the advantages of arbitration.' "].)

## III. DISPOSITION

The judgment is affirmed. Bloom is entitled to its costs on appeal.

GETTY, J.*

WE CONCUR:


HUMES, P. J.


BANKE, J.


A165269

---

* Judge of the Solano County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

24